Carolyn BUTLER, widow and dependent of James McCoy Butler, individually and on behalf of the dependent minor children of James McCoy Butler, Plaintiff-Appellee,

Dorothy B. Reed, widow and dependent of Samuel Wallace Reed, individually and on behalf of the dependent minor children of Samuel Wallace Reed, Plaintiff-Appellee,

v.

AEROMEXICO, a Commercial Air Carrier, Defendant-Appellant.

No. 84–7714.

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1985.

H.H. Grooms, Spain, Gillon, Riley, Tate & Etheredge, Birmingham, Ala., Stephen J. Fearon, Condon & Forsyth, New York City, for defendant-appellant.

James J. Thompson, Hare, Wynn, Newell & Newton, James O. Haley, Birmingham, Ala., for plaintiff-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and DUMBAULD *, District Judge.

DUMBAULD, District Judge:

Appellees' decedents were killed on July 27, 1981, when an airplane operated by defendant crashed while attempting to land at Chihuahua airport in Mexico. The principal issue for determination is whether the conduct of defendant's crew amounted to "wilful misconduct" within the meaning of Article 25 of the Warsaw Convention [1] so as to render inapplicable the convention's $75,000.00 limitation of liability provision (Article 22). After a five-day non-jury trial the District Court awarded appellee Butler $811,543.86 and appellee Reed $790,637.52.[2]

The term "wilful misconduct" (apparently the English equivalent of the French word "dol") has been interpreted in *Koninklijke Luchtvaart Maatschappij N.V. v. Tuller*, 292 F.2d 775, 778–79 (C.A.D.C. 1961), by a panel of which retired Justice

Reed and future Chief Justice Burger were members, as meaning "the intentional performance of an act with knowledge that the . . . act will probably result in injury or damage" or "reckless disregard of the consequences" or "a deliberate purpose not to discharge some duty necessary to safety."

Review of the evidence of record shows that the facts as found by the District Court fall within the foregoing legal standard, and are supported by substantial and convincing evidence.

Appellant urges that the District Court erroneously applied Alabama law rather than the Warsaw Convention. In our judgment, however, the references to "wantonness" under Alabama law were merely supplemental and subsidiary explanatory comments, showing that in fact the Alabama definition of "wantonness" [3] was substantially equivalent to the exposition of the term "wilful misconduct" by Judge Burger in the *KLM* case, *supra*. Article 25(1) permits recourse, if necessary, to the law of "the court to which the case is submitted" (here Alabama) to measure "default . . . considered to be equivalent to wilful misconduct." In the case at bar the District Court's primary reliance was upon the judicial interpretation of the Convention's pri-

---

* Honorable Edward Dumbauld, U.S. District Judge of the Western District of Pennsylvania, sitting by designation.

1. The Warsaw Convention of October 12, 1929 (effective for the United States on October 29, 1934) provided in Article 22 that a carrier's liability should be limited to 125,000 francs for each passenger. After the United States threatened to denounce the Convention the parties reached a supplemental agreement in 1966 that carriers would incorporate in their tariffs a provision increasing the limit to $75,000.00. See 49 U.S.C.A. § 1502, note.

   Article 25 provides that:
   (1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.
   (2) Similarly the carrier shall not be entitled to avail himself of the said provisions, if the damage is caused under the same circum-

stances by any agent of the carrier acting within the scope of his employment.

2. It should be noted that the District Judge appointed an acknowledged expert who testified at a supplemental hearing after the initial trial. The District Judge read the transcripts and exhibits twice, and filed detailed findings of fact and conclusions of law comprising 25 pages. Under Rule 52(a) FRCP "Findings of fact shall not be set aside unless clearly erroneous." We hold that the findings as made are not only not clearly erroneous but are clearly supported by substantial evidence, as will appear subsequently.

3. "Wantonness" under Alabama law "is the conscious doing of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission injury will likely or probably result." *McDaniel v. Frye*, 536 F.2d 625, 627 (5th Cir.1976).

mary term "wilful misconduct," but as a second string to its bow was pointing out that if it were needful to resort to local law, the Alabama concept of "wantonness" was substantially equivalent to the Convention's primary standard and would support the decision reached by the court. We see no harm to appellant or harmful error (if there be any discrepancy at all in the international standard and the Alabama standard) in the District Court's discussion of this comparison.

■ Although objecting to reference to Alabama law as to liability, appellant also presents as a reversible error the trial court's failure to limit damages to what would be recoverable under Alabama law regarding punitive damages. Apparently Alabama follows the uniquely unusual rule that in a wrongful death case only punitive damages are recoverable, and no compensatory damages are allowable. *Bonner v. Williams*, 370 F.2d 301, 303 (5th Cir.1966). Apparently Massachusetts has (or had in 1966) a similar rule. Manifestly such a regime conflicts with the tenor of the Warsaw Convention, which contemplates compensation for victims of air disasters. Hence it was not error for the District Court to award pecuniary damages.

■ Nor are we impressed with appellants' contention that in calculating damages the impact of federal income tax should have been taken into account. In an action based upon the Warsaw Convention the fluctuating parochial peculiarities of national or local fiscal impositions may properly be disregarded as introducing unnecessary complexities. Nor is the finder of fact confined to a particular method of assessing damages. A fair and reasonable result is all that is required by such type of international procedure, just as in calculating a rate base for a public utility. *FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 287–88, 88 L.Ed. 333 (1944).

We turn, then, to the crucial question whether the evidence supports the trial court's findings that bring the case at bar within the terms of Article 25 of the War-saw Convention as judicially interpreted in courts of the United States.

■ Significant facts from which the court might properly draw the inference that the crew had intentionally performed acts with knowledge that under the circumstances injury might result include the following:

Early on in the flight the crew knew that there were clouds in the vicinity of the destination airport which might develop into severe or dangerous weather and should have been monitored by the crew.

Nevertheless the radar was turned off and not used, although it would have been helpful in detecting the existence of bad weather. The pilot saw or could have seen severe weather in the vicinity of the airport before the radar was deactivated.

It was the duty of the pilot to abort the approach if the airport was not visible at an altitude of 818 feet. At that level visual contact had been lost but the pilot deliberately and intentionally elected not to abort the approach, or even to activate the radar to determine the nature of the weather. At the 300 feet level the crew still had control of the plane and nevertheless failed to execute a missed approach. There was no loss of airspeed from the time the plane began its approach descent until immediately prior to impact with the ground. This shows that there was no downburst forcing the airplane downward at the 300 feet level. It was not until after first striking the ground that full power was applied but no altitude could be gained.

Thus it is an inference sustained by substantial evidence that after the flight crew lost visibility and still had control, and could have aborted the approach, they deliberately continued their descent, with knowledge that such procedure would probably result in injury to passengers. It was their duty to assume that visibility would remain obscured and to execute a missed approach as soon as they encountered loss of visibility at the 818 feet level.

The loss of visibility was a substantial contributing cause to the crash, regardless of any downburst. The plane was not suddenly driven to the ground because of loss of lift, but a safe landing might have been made if the aircraft had ever been properly aligned with the runway. Had it not hit a ditch it might have survived the crash landing.

The District Court's findings were based on objective analysis of the recorded data, the exhibits, and the opinions of experts rather than on subjective evaluation of the credibility of the crew based on observation of their demeanor.

In addition to the foregoing account setting forth facts upon which the District Court relied, appellees in their brief (pp. 32–33) draw attention to other serious shortcomings in the conduct of the flight crew: their failure to shut down the engines and the continuing flow of fuel (quite possibly these failures facilitated the outbreak of fire, and appellees' decedents were burned to death rather than being crushed by traumatic impact with the ground); and failure to open the exit doors and execute the standard emergency evacuation procedure during the ten minutes after the aircraft came to rest before the fire started.

With respect to these failures the District Court charitably concluded that the situation after the crash was "chaos or bedlam" and that the conduct of the crew could be regarded as inadvertent rather than as a course of voluntary, wilful decision-making or reckless disregard of danger. The District Court found that some emergency procedures were successfully performed, while others were "impossible to perform in the chaos that existed."

In any event the instances of "wilful misconduct" specified in the findings of fact made by the District Court clearly suffice to support his decision in favor of the plaintiffs-appellees.

Accordingly the judgment of the District Court is

AFFIRMED.