PER CURIAM.
This is an appeal from a final judgment for the appellee (third party plaintiff) in an action wherein the third party plaintiff sought indemnity and/or contribution for those funds the third party plaintiff paid to settle a medical malpractice action. There can be no question that § 768.31, Florida Statutes (1989) is applicable to the instant case. See § 768.31(7), Florida Statutes (1989); Lincenberg v. Issen, 318 So.2d 386 (Fla.1975). Thus the only question is whether under the facts of this case it meets the criteria set forth in § 768.31, Florida Statutes (1989) to merit contribution.
In the medical malpractice case, pursuant to stipulation, it was agreed that there would be a total settlement by all *1302 defendants of $147,166.66, Dr. Loredo would pay $45,833.33, the hospital would pay a like sum of $45,833.33, and Dr. Fernandez would pay $55,500.00. It was further agreed that all amounts paid by the hospital were solely for the vicarious claim for Dr. Loredo and that there were no valid active negligence claims against the hospital.[1] Further the plaintiff’s claim against *1303 all defendants pursuant to the stipulation was dismissed with prejudice. Findeiss, the appellant, paid the $45,833.33 for Dr. Loredo because his insurance carrier was not able to pay. Thus, the active tort-feasor, Dr. Loredo, did not participate in the settlement and the liability common to Dr. Loredo and the appellee and appellant herein for his negligence was discharged by the two passive tortfeasors. That the two parties herein may be passive tort-feasors, should not preclude the application of the principles of contribution where a common liability to an injured party was completely discharged.
The appellant argues that there is no right of contribution because none of the alleged tortfeasors individually extinguished the full responsibility to the plaintiff. Woods v. Withrow, 413 So.2d 1179 (Fla.1982). If this is the case then the purpose of the Act, to encourage settlement with the plaintiff, would not be fulfilled. The appellant misreads Woods v. Withrow. Woods states that a tortfeasor who settles with the plaintiff is entitled to contribution if the settlement also releases the tortfeasors from whom contribution is sought and in the case of two joint tort-feasors the right of a settling tortfeasor to contribution from the other would depend on whether the injured plaintiff has accepted this settlement as a complete satisfaction and has given a complete release. Here a complete release was given for monies received from the various defendants, and the plaintiff accepted the settlement as a complete satisfaction.
Section 768.31(3) (1989) contains three provisions on how the pro rata shares of tortfeasors in the entire liability are to be determined:
(a) Their relative degrees of fault shall be the basis for allocation of liability.
(b) If equity requires, the collective liability of some as a group shall constitute a single share.
(c) Principles of equity applicable to contribution generally shall apply. (§ 768.-31(3) (1989))
Paragraphs (b) and (c) are the same as when originally enacted. However, as originally enacted in 1975, the Uniform Contribution Among Joint Tortfeasors Act, Section 768.31 provided in Paragraph 3(a), that in determining the pro rata shares of the tortfeasors in the entire liability, relative degrees of fault shall not be considered. § 768.31, Florida Statutes (1975); Lincenberg v. Issen, supra. Therefore, under the uniform act as originally adopted, “pro rata shares” meant the entire liability is allocated evenly among the tortfeasors, except where equitable principles call for some variance from that formula by virtue of Paragraphs (b) or (c). Woods v. Withrow, supra.
In 1976, the legislature amended Paragraph 3(a) to provide for consideration *1304 of relative degrees of fault in determining pro rata shares. Under that amendment to the act, no longer is the entire liability allocated evenly among the tortfeasors as a starting point but rather it is allocated based upon relative degrees of fault.
Paragraph 3(b) invokes the rule of equity which requires class liability, including the common liability arising from vicarious relationships, to be treated as a single share. For instance, the liability of a master and servant for the wrong of a servant should in fairness be treated as a single share. Lincenberg, supra.
In addition to the above rules to apportion pro rata shares, Paragraph 3(c) allows for variance from the formula based upon equitable principles generally. Thus, under the act now, the initial determination of pro rata shares is based on relative degrees of fault, but is still subject to variance by virtue of the equitable principles of Paragraphs 3(b) and 3(c).
It was stipulated by all parties that the amount paid by or on behalf of the hospital for settlement was entirely for the vicarious claim against it for Dr. Loredo.[2] As between the appellant, the appellee, and Dr. Loredo, Dr. Loredo was the only one with any active fault. Class liability requires that the appellant, Findeiss, and Dr. Loredo be treated as a single share[3] since the appellant provided him to the hospital and paid him. Thus, the allocation of liability based on fault pursuant to § 768.31(3)(a) requires that the final judgment be affirmed.
Therefore, the final judgment appealed herein is hereby affirmed.
Affirmed.
BARKDULL and LEVY, JJ., concur.

.The parties in the medical malpractice case filed the following joint stipulation and dismissal:
“JOINT STIPULATION AND DISMISSAL COMES NOW the Plaintiff, RAFAEL VELAZQUEZ, as Personal Representative of the Estate of LILIA VELAZQUEZ, and the Defendants, RAUL LOREDO, M.D. and AMERICAN HOSPITAL OF MIAMI, INC. by and through their undersigned attorneys and file this their Joint Stipulation and Motion to Approve Dismissal with Prejudice in accordance with the terms and agreements as set forth hereinafter:
1. The Plaintiff has agreed to amicably settle and resolve this matter for the total sum of One Hundred Forty Seven Thousand One Hundred Sixty Six Dollars Sixty Six Cents ($147,166.66). Of that total sum, RAUL LOREDO, M.D. will pay the amount of Forty Five Thousand Eight Hundred Thirty Three Dollars Thirty Three Cents ($45,833.33). AMERICAN HOSPITAL OF MIAMI, INC. will pay the sum of Forty-Five Thousand Eight Hundred Thirty Three Dollars Thirty Three Cents ($45,833.33). PEDRO R. FERNANDEZ, M.D. will pay the sum of Fifty Five Thousand Five Hundred Dollars ($55,-500.00).
2. The parties further stipulate that the Plaintiff is filing this Joint Stipulation of Dismissal with Prejudice as to all named Defendants herein, ....
3. Each party to this stipulation will bear their own attorney's fees and costs as pertains to the Plaintiffs claim against each said Defendant.
4. As between the Defendants, RAUL LORE-DO, M.D. and AMERICAN HOSPITAL OF MIAMI, INC. the parties further agree to the following stipulation:
a. The parties of this portion of the stipulation, RAUL LOREDO, M.D. and AMERICAN HOSPITAL OF MIAMI, INC. stipulate that the Plaintiffs claim against AMERICAN HOSPITAL OF MIAMI, INC. was only a vicarious liability claim for the conduct of RAUL LOREDO, M.D.
b. That the payment made by AMERICAN HOSPITAL OF MIAMI, INC. to the Plaintiff of Forty Five Thousand Eight Hundred Thirty Three Dollars Thirty Three Cents ($45,833.33) was entirely for the vicarious liability claim against AMERICAN HOSPITAL OF MIAMI, INC. for the conduct of RAUL LOREDO, M.D.
c. That there is no valid active negligence claim against AMERICAN HOSPITAL OF MIAMI, INC. for the conduct of its actual employees other than the vicarious claim for RAUL LORE-DO, M.D.
d. That the FLORIDA HOSPITAL TRUST FUND, as a self insurer for AMERICAN HOSPITAL OF MIAMI, INC. is the real party in interest that made the payment of Forty Five Thousand Eight Hundred Thirty Three Dollars Thirty Three Cents ($45,833.33) to the Plaintiff for the conduct of RAUL LOREDO, M.D.
e. That the FLORIDA HOSPITAL TRUST FUND by and through AMERICAN HOSPITAL OF MIAMI, INC. specifically reserves all rights of indemnity and subrogation for the payment made to the Plaintiff in this action for the conduct of RAUL LOREDO, M.D.
f. That the parties hereto stipulate that claims for indemnity and subrogation may be pursued through this main action through the Court’s reservation of jurisdiction and the allowance of the parties hereto to file separate cross claims or third party claims for indemnity subsequent to the settlement of this main action.
g. That RAUL LOREDO, M.D. agrees to entry of a final judgment against him and in favor of the FLORIDA HOSPITAL TRUST FUND for and in behalf of AMERICAN HOSPITAL OF MIAMI, INC. in the sum of Forty Five Thousand Eight Hundred Thirty Three Dollars Thirty Three Cents ($45,833.33). Further that RAUL LORE-DO, M.D. agrees to entry of a final judgment against him and in favor of FINDEISS, HAECK, WESTMARK and CREED, INC. for the sum of Forty Five Thousand Eight Hundred Thirty Three Dollars Thirty Three Cents ($45,833.33). That this said final judgment represents the right to indemnity to these two entities against RAUL LOREDO, M.D. for settlement of this main action.
h. Further, that FLORIDA HOSPITAL TRUST FUND, for and in behalf of AMERICAN HOSPITAL OF MIAMI, INC. and FINDEISS, HAECK, WESTMARK and CREED, INC. hereby agree and covenant not to execute against RAUL LOREDO, M.D. on the final judgments to be entered in behalf of those said parties and against RAUL LOREDO, M.D. Further, that RAUL LOREDO, M.D. hereby assigns all rights and interest he may have to the FLORIDA HOSPITAL TRUST FUND and FINDEISS, HAECK, WESTMARK and CREED, INC. to pursue satisfaction of the final judgment entered against him and in behalf of those parties against any professional liability insurance carriers that may have provided benefits and coverage for RAUL LOREDO, M.D. at the time of this said incident.
5.Additionally, Michael Parenti, III, Esquire, hereby files his Notice of Appearance as attorney for FINDEISS, HAECK, WESTMARK and CREED, INC., and agrees to accept service of process of the third party claim for indemnity and subrogation which may be filed by the FLORIDA HOSPITAL TRUST FUND as set forth above.
*1303 6. Further, that the parties to this stipulation agree that the settlement with Plaintiff as above was a reasonable amount, was in good faith, and was necessary to resolve this matter based upon the conduct of the parties hereto, as set forth herein above.
WHEREFORE, the parties to this stipulation do hereby move the Court for entry of the attached Order accepting this stipulation, dismissing the cause of action by Plaintiff against each said Defendant with prejudice and reserving jurisdiction to entertain cross claims and third party claims for indemnity and subrogation to be filed by the Defendants and parties as set forth herein above.
DATED this 15 day of June, 1987.
Jeffrey C. Fulford, Esquire
ADAMS, HILL, FULFORD & MORGAN
1417 East Concord Street
Suite 101
Orlando, FL 32803
(305) 896-0425
Attorney for Defendants,
AMERICAN HOSPITAL OF MIAMI
FLORIDA HOSPITAL TRUST FUND
Charles Curran, Esquire
HEADLEY, SHEROUSE & CURRAN
1999 S.W. 27th Avenue
Miami, FL 33145
Attorney for Plaintiff
Michael Parenti, III, Esquire
PARENTI & FALK, P.A.
44 West Flagler Street
Miami, FL 33130
Attorney for Defendants, RAUL
LOREDO, M.D., FINDEISS, HAECK, WESTMARK and CREED, INC.”

. See footnote 1.

. The parties herein further stipulated to the following facts for purposes of this case.
The Third Party Plaintiff and the Third Party Defendants, by and through their undersigned attorneys stipulate as follows:
"1. The Third Party Defendant, FINDEISS, HAECK, WESTMARK & CREED, INC. (hereinafter referred to as "F.H.W. & C.”) agreed by oral contract with the Third Party Plaintiff, AMERICAN HOSPITAL OF MIAMI, INC. (hereinafter referred to as “Hospital”) to provide emergency room physicians for the Hospital.
2. F.H.W. & C. was the sole provider of emergency physicians to the Hospital and Dr. Loredo was one such physician.
3. Dr. Loredo was not an employee, but rather, an independent contractor of F.H.W. & C. and did not have a written contract with F.H.W. & C.
4. The Hospital required that Dr. Loredo go through the credentialing process and be approved for staff privileges before he was permitted to work in the emergency department and such privileges were granted by the Hospital to him.
5. As a physician who had been granted privileges to work in the emergency department of the Hospital, he was subject to the rules, regulations and by-laws of the Hospital.
6. The Hospital had no knowledge of whatever contractual arrangements existed between Dr. Loredo and F.H.W. & C.
7. The Hospital paid F.H.W. & C. a certain amount monthly to provide emergency physicians and F.H.W. & C., in turn paid the emergency room physicians including Dr. Loredo.
8. There were no direct payments by the Hospital to any of the emergency room physicians and the Hospital was not involved in the scheduling of these physicians in the emergency department.
9. F.H.W. & C. provided medical malpractice insurance for Dr. Loredo.
10. The emergency room physicians who worked at the Hospital used their own professional judgment in rendering care to patients presenting to the emergency department of the Hospital.
11. The Hospital held out its emergency department to the public and did not in any way advise the public that the emergency room physicians working therein were not its agents, servants and/or employees.
12. No contract was ever signed between the Hospital and F.H.W. & C., although there had been discussions about such a contract.
13. The Hospital did have written agreements with other physician groups, but was unable to explain why the written contract proposed between F.H.W. & C. and the Hospital was never signed.
14. There was no agreement with the Hospital and EMSA.
15. F.H.W. & C. was a wholly owned subsidiary of EMSA at the time of the subject treatment.
16. The parties agree that these stipulations (with the exception of #15) apply at all times material.
WHEREFORE, the parties respectfully request this Court to accept the foregoing stipulations as fact.”