24 F.Supp.2d 1340 (1998)
In re AIR CRASH NEAR CALI, COLOMBIA ON DECEMBER 20, 1995.
This Matter Relates to: Sarah CARLSON, etc., Estate of Anthony Galvis, Albert R. Galvis, etc., Estate of German Augustus Galvis, Delfi Casafuz Gonzalez, etc., Estate of Joyner Piedrahita, Maria Julisa Mestre, etc., Estate of Leonides Quintero, Liliana Rosalina Arias de Cruz, etc., Estate of Humberto Enrique Cruz Valencia, Plaintiffs,
v.
AMERICAN AIRLINES, INC., et al., Defendants.
Nos. 96-MD-1125, 96-263-CIV., 97-1443-CIV., 97-2232-CIV., 97-2687-CIV., 97-2688-CIV.
United States District Court, S.D. Florida.
February 25, 1998.
*1341 Aaron Podhurst, Podhurst Orseck, et al., Miami Fl., for plaintiffs Steering Committee.
Howard Barwick, Barwick Dillian et al., Miami Fl., George A. Manfredi, Sullivan Johnson & Manfredi, Miami Fl., for third-party plaintiff.
Jeppesen-Sanderson, William G. Burd, Burd Downs & Magathan, Miami Fl., Honeywell, Richard M. Dunn, Bilzin Sumberg et al., Miami Fl., for third-party defendants.

ORDER DENYING THIRD PARTY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
HIGHSMITH, District Judge.
THESE CAUSES came before the Court upon Third Party Defendants Honeywell, Inc.'s ("Honeywell") and Jeppesen Sanderson, Inc.'s ("Jeppesen") respective motions for summary judgment on the issue of contribution. The Court held a hearing regarding these motions on February 13, 1998. Having heard argument of counsel and upon a thorough review of the record and the pertinent case law, the Court denies the motions.

*1342 PROCEDURAL BACKGROUND

This multidistrict litigation arises from the crash of American Airlines Flight 965 near Cali, Colombia, on December 20, 1995. One hundred and fifty one passengers and all six cabin crew members perished in the crash. Four passengers suffered non-fatal injuries. On September 11, 1997, the Honorable Stanley Marcus, who originally presided over the litigation, issued a partial summary judgment on the issue of liability against Defendant American Airlines as to both the passenger cases and the cabin crew cases. With regard to the passenger cases, Judge Marcus reached the legal conclusion that the acts of the pilots of Flight 965 amount to "willful misconduct" within the meaning of the Warsaw Convention. (Order Granting Motions for Summary Judgment, at 117.) As to the cabin crew cases, which are governed by Florida law, Judge Marcus concluded that American Airlines is liable for negligence as a matter of law. Id. at 108-13.[1]
In light of the foregoing rulings, the liability trial, which had been set to commence on September 16, 1997, was canceled. Thereafter, the pre-trial damages phase of the litigation proceeded. On November 14, 1997, the matter was reassigned to the undersigned District Judge and trial preparations continued, until, in mid-January, 1998, a sixty day stay was imposed to allow the plaintiffs and American Airlines to engage in settlement negotiations. However, the litigation between American Airlines and Third Party Defendants Honeywell and Jeppesen was exempted from the stay.[2]
In the five above-styled passenger cases, American Airlines has asserted third party claims for contribution and for "legal or equitable subrogation."[3] American Airlines predicates its claims on Honeywell's role as supplier of the Flight Management Computer (FMC) used on Flight 965 and Jeppesen's role in furnishing the navigational database programmed into the FMC and the corresponding aviation charts.[4] Without making any findings in this regard but simply reflecting the narrative contained in Judge Marcus' summary judgment opinion, the Court notes that, on the approach to Cali, the pilots entered "R" into the FMC, anticipating (based on the aviation charts) that this cipher corresponded to a beacon designated as "Rozo". Instead, another beacon designated as "Romeo" was activated. This resulted in a change of the aircraft's heading to the east, over the Andes mountains. When the pilots became aware of the aircraft's easterly swing, they turned back to the west, in the direction of the valley where the Cali airport is located. Sadly, since the aircraft had been descending during these directional changes, Flight 965 never made it back to the valley. It crashed into the side of a mountain.

DISCUSSION
Honeywell and Jeppesen predicate their motions for summary judgment on Judge Marcus' legal conclusion that the conduct of the pilots constitutes wilful misconduct under the Warsaw Convention and the operation of the Uniform Contribution Among Tortfeasors Act ("UCATA") upon said conclusion.[5] *1343 Honeywell and Jeppesen differ, however, with regard to the UCATA version that should be applied as to each of them. Honeywell advocates application of the Act as adopted by Arizona, while Jeppesen argues for consideration of Colorado's version. American Airlines, in turn, argues that "federal common law" should apply to uphold its contribution claims against both third party defendants. In the alternative, American Airlines seeks application of Florida law, a state that has also adopted UCATA. In light of these divergent postures, the Court must address at the outset the issue of what law should apply.

1. "Federal Common Law"
First, the Court considers American Airlines' argument that it may pursue its contribution claims "under the applicable federal common law." There are serious flaws with American Airlines' posture. Suffice it to say, however, that the "applicable federal common law" invoked by American Airlines is essentially derived from a single case, Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir.1974), cert. denied sub nom, Forth Corp. v. Allegheny Airlines, Inc., 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975). In Kohr, the Seventh Circuit declared a need for "a federal rule of contribution and indemnity governing mid-air collisions", such as the one giving rise to the litigation before it. Id. at 403. The case involved a small airplane which collided with Allegheny's aircraft over Indiana airspace, while the larger craft was under the direction of federal traffic controllers out of Indianapolis' airport. All eighty-two occupants of the Allegheny plane, as well as the pilot of the small craft, perished. Wrongful death actions were commenced on behalf of almost all of the decedents. The named defendants were Allegheny, the corporate owners of the small craft, the estate of the small craft's pilot and the United States. The claims against the latter were brought pursuant to the Federal Tort Claims Act, due to the involvement of the traffic controllers, who were employed by the Federal Aviation Administration. The trial court had applied Indiana's absolute bar against contribution and indemnification among joint tortfeasors to dismiss the cross-claims and third-party complaints for contribution and indemnity brought by Allegheny and the United States against the corporate owners of the small craft and against the estate of the small craft's pilot. Id. at 401-03.
Given this factual scenario, the Kohr court deemed it desirable that a federal rule of contribution and indemnity be applied. Id. at 403. The court perceived a "predominant, indeed almost exclusive, interest of the federal government in regulating the affairs of the nation's airways" as justification for adopting such a rule. Id. A second benefit would be the elimination of "inconsistency of result in similar collision occurrences as well as within the same occurrence due to the application of differing state laws on contribution and indemnity." Id. Having determined the need for establishing a "federal rule of contribution and indemnity", the court went on to formulate such a rule by basing contribution and indemnity on comparative negligence. In so doing, the Kohr court rejected "as being outmoded and entirely unsatisfactory, the contention that the federal rule should be one of no contribution." Id. at 405. The court explained:
We agree that "there is an obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered on to one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff['s] whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free."
Id. at 405 (citing Prosser, Law of Torts, § 50 (4th ed.1971)).
As discussed later in this opinion, these sentiments had been expressed by other *1344 courts when carving out exceptions to the common law's "no contribution" rule. Indeed, a similar rationale pervades the Uniform Contribution Among Tortfeasors Act and its adoption by numerous jurisdictions. However, the Kohr court's perceived need for creating a uniform body of federal law governing contribution and indemnity in aviation cases has not been echoed by other federal courts. In Overseas Nat'l Airways, Inc. v. United States, 766 F.2d 97 (2d Cir. 1985) for example, the Second Circuit rejected the United States' request for the creation and application of "a federal common law rule of decision that would govern whenever the United States seeks contribution from a joint tortfeasor in an aircraft accident case." Id. at 100.[6] The Overseas court found the arguments of the United States persuasive but concluded that it was not free to create such a federal rule of contribution in light of the provisions of the Federal Tort Claims Act and applicable Supreme Court precedent. Id. Specifically, the Overseas court cited Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), for the proposition that "the Supreme Court warned that federal courts must be extremely cautious in creating federal law that preempts traditional state law causes of action." Id. at 100-01. Heeding this warning, this Court declines American Airlines' invitation to apply "federal common law" to the contribution claims in this litigation and to rely upon Kohr v. Allegheny as the source of the "applicable federal common law."

2. Choice of Law
The Court next considers the parties' diverse proposals regarding which state law should apply to American Airlines' contribution claims against Honeywell and Jeppesen. As previously noted, Honeywell and Jeppesen advocate application of the law of two different states  Arizona and Colorado  with respect to the contribution claims against each of them. As an alternative to "federal common law," American Airlines seeks application of Florida law as to both Honeywell and Jeppesen. All agree that the choice of law rules of Florida (the forum state) determine which law applies.
Florida has adopted the "significant relationships test" embodied in the Restatement (Second) of Conflict of Laws § 145-46, thereby receding from the strict application of lex loci delicti to issues arising out of tort actions. Pennington v. Dye, 456 So.2d 507, 508 (Fla. 2d DCA 1984). See also Wal-Mart Stores, Inc. v. Budget Rent-A-Car Sys., 567 So.2d 918, 920 (Fla. 1st DCA 1990), review denied, 581 So.2d 163 (Fla.1991). Thus, earlier in this litigation, Judge Marcus applied the Restatement (Second) approach to conclude that Florida law governs the compensatory damages claims asserted in the passenger cases that were originally filed in Florida. (Order on Choice-of-Law Issues Regarding Compensatory Damages, issued on August 18, 1997, at 1.)[7]
In performing the choice of law calculus, Judge Marcus applied Section 145 of the Restatement (Second), which states:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence *1345 and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Restatement (Second) of Conflict of Laws § 145 (1971).
Section 6(2), in turn, articulates the following principles to guide the Section 145 contacts analysis:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6 (1971).
Applying these principles to the passenger cases that were originally filed in Florida, Judge Marcus conducted a careful choice-of-law analysis, taking into consideration the various proposals of the parties, namely, the law of Florida, the law of Colombia and the respective laws of each passenger's domicile. Judge Marcus concluded that "Florida is the jurisdiction with the most significant relationship to the case, and Florida law should and must be applied to the compensatory damages claims in the lawsuits where the Plaintiffs elected to sue in a Florida forum." (Order on Choice-of-Law Issues Regarding Compensatory Damages, at 54.)
With regard to contribution claims, Section 173 of the Restatement Second provides: "The law selected by application of the rule of § 145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor." Restatement (Second) of Conflict of Laws § 173 (1971). The pertinent comment states, in relevant part:
The determination of the state of the applicable law should be made in the light of the choice-of-law principles stated in § 6. Most cases to date have held that the question of contribution between joint tortfeasors is determined by the local law of the state of conduct and injury. It may be questioned whether such decisions will invariably be followed in the future in view of the growing realization that all issues in tort need not be governed by the same law. The state where conduct and injury occurred will not by reason of these contacts alone be the state that is primarily concerned with the question whether one tortfeasor may obtain contribution against another. The local law of this state will, however, be applied unless some other state has a greater interest in the determination of the particular issue. If both tortfeasors are domiciled in the same state, and particularly, if in addition there is a special relationship between them which is centered in that state, it would seem that, usually at least, this state would have the greatest interest in the issue of contribution and that its local law should be applied.
Restatement (Second) of Conflict of Laws § 173 cmt. a (1971).
As previously noted, the result of the Section 145 calculus performed by Judge Marcus resulted in the selection of Florida law over the law of Colombia and that of each of the passengers' respective domiciles. With respect to its contribution claims against both Honeywell and Jeppesen, American Airlines proposes application of Florida law.[8] *1346 Honeywell and Jeppesen, however, argue that the laws of two different sovereigns  Arizona and Colorado  should apply to American Airlines' claims against each of them. In support of its position that Arizona law should be selected with respect to the claims against it, Honeywell strongly relies on the argument that the relationship between American Airlines and Honeywell with respect to the Flight Management Computer was centered in Arizona. Similarly, Jeppesen argues that the relationship between American Airlines and Jeppesen with respect to the flight navigation data and aviation charts was centered in Colorado, thereby requiring the application of Colorado law to American Airlines' claims against it. However, application of the laws of two different jurisdictions to the contribution claims in this litigation would contravene one of the Restatement (Second)'s principles, as enunciated in Section 6(2)(f), namely, "certainty, predictability and uniformity of result". Moreover, American Airlines, Honeywell and Jeppesen are each domiciled in different states.[9] Thus, the commentary to Section 173, expressing a preference for the law of the state where the relationship among the tortfeasors is centered, carries little weight, since it is predicated on a common state of domicile. Finally, the Court notes that in their briefs, both Honeywell and Jeppesen argue that there is only a "false" conflict of laws with respect to Arizona, Colorado and Florida, since all three states have adopted the Uniform Contribution Among Tortfeasors Act.[10] Therefore, applying the Restatement (Second) principles in conjunction with Judge Marcus' erudite choice of law analysis, the Court concludes that Florida law should also govern American Airlines' contribution claims against Honeywell and Jeppesen. Because the contribution issues have no direct effect upon the plaintiffs' damages claims, this ruling is applicable to all of the five above-styled cases, irrespective of the state in which each of them was originally filed.

3. The Uniform Contribution Among Tortfeasors Act:

a. A historical perspective:
In 1799, the common law principle that there is no right of contribution as between joint tortfeasors was established. Annotation, Contribution between negligent tortfeasors at common law, 60 A.L.R.2d 1366, 1368 (1958) (citing Merryweather v. Nixan, 8 Term.Rep. 186, 101 Eng.Rep. 1337 (K.B. 1799)). The rule was articulated as, "in pari delicto potior est conditio defendentis". Id. In modern day terms the rule means, "Where the fault is mutual, the law will leave the case as it finds it." Black's Law Dictionary 791 (6th ed.1990). Over time, this harsh rule was softened in a number of jurisdictions by permitting contribution among joint tortfeasors "so long as their negligent acts were not characterizable, because of the degree of negligence involved, as intentional wrongs, and so long as the joint tortfeasors share[d] a common liability to the injured person." Annotation, Contribution between negligent tortfeasors at common law, 60 A.L.R.2d at 1371.
At least one jurisdiction that applied the exception to the common law rule also considered situations involving vicariously liable tortfeasors. In George's Radio v. Capital Transit Co., 126 F.2d 219 (D.C.Cir.1942), the United States Court of Appeals for the District of Columbia considered the question "whether  in the District of Columbia  a right of contribution exists and should be declared between two persons liable for a tort in the absence, on the part of either, of any personal participation, personal culpability, fraud, or moral wrong." Id. at 219. The case arose from a three-way traffic accident involving a Capital Transit Company bus, an automobile operated by an agent of George's Radio, Inc. and an individual, Oisboid, who sued both businesses for damages. Upon prevailing in the underlying action against both defendants, Oisboid demanded payment *1347 of the judgment in full by George's Radio, Inc. and refused to take enforcement actions against the Transit Company. George's Radio, Inc. then brought a suit in equity for contribution against the Transit Company. Id. at 220.
Abandoning its earlier absolute rule barring contribution, the court stated, "We are, therefore, of opinion that the rule denying contribution in favor of unintentional or negligent tortfeasors is wrong to the same extent that it would be wrong to enforce contribution in the case of wilful wrongdoers or those guilty of flagrantly wrongful conduct." Id. at 221. After citing with approval recent cases applying these more equitable concepts, the court concluded, "The sum and substance of the ruling in all is that, where the parties are not intentional and wilful wrongdoers, but are made such by legal inference or intendment, contribution may be enforced." Id. Thus, the court allowed the contribution claim to proceed.
Some years later, in Knell v. Feltman, 174 F.2d 662 (D.C.Cir.1949), the same court considered whether the fact that one tortfeasor "had personally participated in the commission of the tort" would take the case "out of the ruling of the George's Radio case where both wrongdoers were `vicariously' negligent." Id. at 665-66. After commenting on the widespread revulsion against the strict common law rule and noting that "many courts have riddled it with exceptions," the court articulated one such exception as: "contribution may be enforced among concurrent tort-feasors who are only vicariously negligent." Id. at 666. The court went on to explain, "Obviously the creation of this exception was a differentiation from the Merryweather situation where the wrongdoers were deliberately such, and so was a recognition, perhaps unconscious, of the true Merryweather rule. Thus went the reasoning: if the tort-feasors were not personally present and had not directed their agents to commit the tort, they could not have intentionally done wrong and, therefore, the harsh rule of no contribution should be relaxed in their favor." Id. The court concluded, "No reason appears for denying the same favorable treatment to the unintentionally negligent, even though he personally committed the tortious act." Id.

b. Florida law:
Florida applied the strict rule of no contribution until 1975. Yet, as early as 1849, the Florida Supreme Court allowed contribution in an action of assumpsit, stating, "The principal (sic) of contribution does not seem to have sprung from contract, but is based on a principle of justice and equity, that one person should not be singled out by the creator to pay the whole demand; and where this occurs, the law intervenes and places sureties relatively to each other in a state of equality as to the amount paid, and gives the party paying a remedy by action for contribution." Love v. Gibson, 2 Fla. 598, 618 (1849).
In Lincenberg v. Issen, 318 So.2d 386 (Fla. July 30, 1975), the Florida Supreme Court receded from the common law rule of no contribution in tort cases, noting, "The rationale for this change of view is generally explained that principles of justice require that in the case of a common obligation, the discharge of it by one of the obligors without proportionate payment from the others, gives the latter an advantage to which he is not equitably entitled." Id. at 390.[11] One of the factors considered by the Florida Supreme Court for abandoning the rule of no contribution was Florida's adoption of a comparative negligence rule. Taking this development into consideration, the Florida Supreme Court reasoned that "it would be undesirable for this Court to retain a rule that under a system based on fault, casts the entire burden of a loss for which several may be responsible upon only one of those at fault." Id. at 391.
As noted by the Supreme Court, during the pendency of the Lincenberg appeal, Florida adopted the Uniform Contribution Among Tortfeasors Act, which became effective on June 13, 1975 and applied to all causes of action pending as of that date. Id. at 391-92. Rather than rely on the newly enacted statute, however, the Supreme Court independently rejected the common law rule.
*1348 As adopted by Florida (Fla.Stat. § 768.31), the Uniform Contribution Among Tortfeasors Act ("UCATA") provides, in pertinent part:
(2)(a) Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
(2)(b) The right of contribution exists only in favor of a tortfeasor who has paid more than her or his pro rata share of the common liability, and the tortfeasor's total recovery is limited to the amount paid by her or him in excess of her or his pro rata share. No tortfeasor is compelled to make contribution beyond her or his own pro rata share of the entire liability.
(2)(c) There is no right of contribution in favor of any tortfeasor who has intentionally (willfully or wantonly) caused or contributed to the injury or wrongful death.
. . . . .
(3) In determining the pro rata shares of tortfeasors in the entire liability:
(a) Their relative degrees of fault shall be the basis for allocation of liability.
(b) If equity requires, the collective liability of some as a group shall constitute a single share.
(c) Principles of equity applicable to contribution generally shall apply.
Fla.Stat.Ann. § 768.31 (West 1997 & Supp. 1998).
It is significant to note that, unlike Florida's version, the model statute encloses the words "willfully or wantonly" in brackets rather than parentheses. Specifically, the model Act provides: "There is no right of contribution in favor of any tortfeasor who has intentionally [willfully or wantonly] caused or contributed to the injury or wrongful death." Uniform Contribution Among Tortfeasors Act § 1(c), 12 U.L.A. 194 (1996). According to the comments accompanying the 1955 Revised Act:
The substance of this provision is found in a few of the existing statutes, usually in rather vague language. Kentucky and Virginia, for example, provide that there must be no "moral turpitude." The 1939 Act was silent on the matter. The policy here followed is that of the original rule as to contribution, that the court will not aid an intentional wrongdoer in a cause of action which is founded on his own wrong. In cases of concerted battery, for example, there appears to be little reason to shift any part of the liability to another.
Two valid reasons exist for extending the exclusion to wilful and wanton acts causing or contributing to the injury.
In the first place wilful and wanton acts seem naturally to belong in the same class with intentional wrongs and to imply moral turpitude on the part of the wrongdoer. The policy of the section as drafted adopts the law of those states which do not recognize classification of negligence into degrees. It is intended to convey the idea that there is a difference between negligence and wilful or wanton misconduct. (See Srajer v. Schwartzman, 164 Kan. 241, 188 P.2d 971, c. 248.)
In the second place, by excluding wilful and wanton actors from the right to contribution, we eliminate most of the arguments urged for a rule allocating the shares of liability on the basis of relative degrees of fault. (See Sec. 2.)
In many states "gross and wanton negligence" in guest statutes is construed to mean wilful and wanton conduct. This is the rule which should be applied in determining the right of contribution under this act.
Brackets have been placed around the words "wilfully or wantonly" so that they may be omitted in those states where by definition of the terms they mean something less than they imply and where by including them the bar of the remedy would be too broad.
Uniform Contribution Among Tortfeasors Act § 1(c) cmt., 12 U.L.A. 195-96 (1996).
Another significant difference between the model Act and Florida's version is found in the determination of pro rata shares. Florida's statute dictates that, "In determining the pro rata shares of tortfeasors in the entire liability: their relative degrees of fault shall be the basis for allocation of liability." *1349 Fla.Stat.Ann. § 768.31(3)(a) (West 1997). The model Act provides that, "In determining the pro rata shares of tortfeasors in the entire liability their relative degrees of fault shall not be considered." Uniform Contribution Among Tortfeasors Act § 2(a), 12 U.L.A. 246 (1996). The comment to this section states:
This section in positive terms resolves several difficult questions of policy.
First, it recognizes and registers the lack of need for a comparative negligence or degree of fault rule in contribution cases. As stated in the comments on subsection 1(c) the exclusion of intentional, wilful and wanton actors from the right to contribution eliminates the better arguments for a relative degree of fault rule.
Uniform Contribution Among Tortfeasors Act § 2 cmt., 12 U.L.A. 246 (1996).
Florida adopted the remainder of the pro rata share provision verbatim from the model Act: "If equity requires, the collective liability of some as a group shall constitute a single share. Principles of equity applicable to contribution generally shall apply." Fla.Stat. Ann. § 768.31(3)(b)-(c) (West 1997). The comments of the model statute's drafters with regard to collective liability provide:
Second [this section] invokes the rule of equity which requires class liability, including the common liability arising from vicarious relationships, to be treated as a single share. For instance the liability of a master and servant for the wrong of the servant should in fairness be treated as a single share.
Uniform Contribution Among Tortfeasors Act § 2 cmt., 12 U.L.A. 246 (1996).
It appears from the foregoing commentary, that the drafters of the model Act intended for a state to either keep the terms "wilfully or wantonly", thereby barring contribution where a tortfeasors' conduct met either the "intentionally" or the "wilfully or wantonly" standards, or to eliminate the optional "wilfully or wantonly" language, thereby making the contribution remedy broader. It also appears that the drafters of the model Act did not anticipate Florida's decision to import the words "wilfully or wantonly," albeit in parentheses, while computing pro rata shares on the basis of degrees of fault, rather than on simple proportion based on the number of joint tortfeasors. Finally, it is noteworthy that the drafters considered as equitable the treatment of vicariously liable and actual tortfeasors as a single entity for purposes of determining the number of pro rata shares.[12]
Florida's decision to prorate shares on the basis of degrees of fault is logical when considering the contribution statute in pari materia with the comparative fault statute. Indeed, the Florida Supreme Court in Lincenberg v. Issen, 318 So.2d 386 (Fla.1975) made it plain that the two go hand in hand when it observed, "it would be undesirable for this Court to retain a rule that under a system based on fault, casts the entire burden of a loss for which several may be responsible upon only one of those at fault." Id. at 391. Interestingly, Florida's comparative fault statute "applies to negligence cases" and "does not apply ... to any action based upon an intentional tort." Fla.Stat. Ann. § 768.81(4)(a)-(b) (West 1997) Thus, the Florida legislature's decision to include the words "wilfully or wantonly" in the contribution statute, but in parentheses, might be interpreted as merely defining the word "intentionally", the only level of conduct that explicitly bars a tortfeasor from the benefits of the comparative fault statute.

c. Analysis:
With these underlying principles in mind, the Court next considers the applicability of Florida's UCATA as a bar to American Airlines' contribution claims. As previously stated, Honeywell and Jeppesen rely *1350 on Judge Marcus' determination that the Flight 965 pilots engaged in "willful misconduct" to invoke UCATA's denial of a right of contribution to "any tortfeasor who has intentionally (willfully or wantonly) caused or contributed to the injury or wrongful death." Fla.Stat.Ann. § 768.31(2)(c) (West 1997).
Given the statutory ambiguities discussed above, it is not surprising that a review of Florida cases provides little guidance. In Diaz v. Sears, Roebuck & Co., 475 So.2d 932, 934 (Fla. 3d DCA 1985), review denied, 486 So.2d 597 (Fla.1986), the Third District Court of Appeals flatly stated that the contribution bar "applies only to intentional tortfeasors." In an earlier opinion, however, the Third District remanded a case to the trial court for consideration of various issues, including whether a joint tortfeasor "was guilty of wanton conduct causing or contributing to the injury, such as to preclude him from recovering contribution." Johnson v. Ludwig, 328 So.2d 35, 37 (Fla. 3rd DCA 1976). Moreover, the case upon which both Honeywell and Jeppesen rely does not completely dispose of the issue. In Nesbitt v. Auto-Owners Ins. Co., 390 So.2d 1209 (Fla. 5th DCA 1980), a special verdict form posed the question, "Did Earl I. Tillman [Auto-Owners Ins. Co.'s insured] intentionally (willfully and wantonly) or with reckless indifference to the rights of others, cause or contribute to the injuries to Ethel Nesbitt?", to which the jury answered "yes", underlining the words "reckless indifference" and "rights of others." Id. at 1211. Acknowledging that the contribution statute does not include the words "or with reckless indifference to the rights of others", the Fifth District reasoned:
... willful or wanton conduct or conduct which displays a reckless indifference to the rights of others is tantamount to intentional conduct for the purposes of this statute. It is understandable there may be a lack of proof that a tortfeasor formed a specific intent to injure another, but his conduct may be of such a willful, wanton or reckless degree as to amount to the "intention" mentioned in the statute. In this case the evidence showed the appellee's insured was driving while under the influence of alcohol. Although that in itself may be dangerous or even reckless and come up to the standard intended by the statute and the jury instruction, it does not necessarily do so. It depends upon the facts of the case, the degree of the "influence" and that ultimately is a jury question.

Nesbitt, 390 So.2d at 1211 (emphasis added).
For purposes of applying the Nesbitt court's interpretation of Florida's UCATA to this litigation, the undersigned adopts Judge Marcus' legal conclusion, that the pilots of Flight 965 engaged in "willful misconduct" under the meaning of the Warsaw Convention, as the law of the case. In reaching this conclusion, Judge Marcus applied the test enunciated by the Eleventh Circuit in Butler v. Aeromexico, 774 F.2d 429, reh'g denied, 781 F.2d 905 (11th Cir.1985), under which "willful misconduct may be proved in one of three ways: by showing the intentional performance of an act with (1) knowledge that the ... act will probably result in injury or damage; (2) with reckless disregard of the consequences; or (3) a deliberate purpose not to discharge some duty necessary to safety." (Amended Order Granting Motions for Summary Judgment, at 47.) Judge Marcus analyzed the conduct of the pilots in light of the first two prongs of the Butler test and concluded that no reasonable juror could find that such conduct "did not constitute the intentional performance of an act with knowledge that the ... act will probably result in injury or damage or an act performed in reckless disregard of the consequences". Id. at 91.[13] In addition to accepting Judge Marcus' legal conclusion regarding "willful misconduct" as the law of the case, the undersigned further assumes, for purposes of Honeywell's and Jeppesen's motions, that said conclusion translates to "recklessness" under Florida law. However, the Nesbitt case does not stand for the proposition that all "reckless" conduct bars contribution as a matter of law. Therefore, the Court concludes that Honeywell and Jeppesen are not entitled to summary judgment of non-liability on American Airlines' contribution claims.

*1351 d. Vicarious liability:

American Airlines' posture as a vicariously liable tortfeasor also militates against barring its contribution claims against Honeywell and Jeppesen as a matter of law. As discussed in the historical perspective section of this opinion, the development of exceptions to the common law bar against contribution included equitable considerations with regard to vicariously liable defendants. More recently, two courts that confronted the issue applied equitable principles to allow contribution. In Oelschlager v. Magnuson, 528 N.W.2d 895 (Minn.App.1995), the Court of Appeals of Minnesota stated, "Equity precludes requiring a merely vicariously liable employer to pay all of the damages and then allow a joint tortfeasor, whose actions were a direct cause of the plaintiff's injuries, to escape all responsibility by denying the employer the right of contribution.... A party that is only vicariously liable for another's intentional tort has neither deliberately caused harm nor committed a tort, so the intentional tort theory does not operate to bar [the party's] right to contribution." Id. at 899. Similarly, in Dolinka VanNoord & Co. v. Oppenheimer & Co., 891 F.Supp. 1244 (W.D.Mich.1995), a contribution action, the Western District of Michigan, relying on Oelschlager, allowed plaintiff's contribution claim to proceed, even though the underlying securities fraud case was predicated on the intentional wrongdoing of plaintiff's agent. Id. at 1249. Unlike Oelschlager and Dolinka VanNoord, this litigation does not involve allegations of intentional wrongdoing by the pilots of Flight 965. Rather, they have been found, as a matter of law, to have engaged in "willful misconduct" under the Warsaw Convention. Hence, the reasoning of the Oeschlager and Dolinka VanNoord courts, particularly with regard to their application of equitable principles, is even more apropos in this litigation. Indeed, these more modern cases echo the historical development of the judicial exceptions to the common law rule barring contribution, which ultimately led to the widespread adoption of the UCATA. Therefore, the rationale underlying these cases is equally applicable to the statutory framework.
With particular reference to Florida's adoption of UCATA, the Court finds further support for allowing a vicariously liable tortfeasor's contribution claim to proceed in Florida, in the state's scheme for awarding punitive damages. Under Florida law, "a plaintiff must (a) establish that the conduct of the employee was willful and wanton and (b) establish some fault on the part of a corporate employer in order to support a claim of vicarious liability against the corporate employer for punitive damages." Schropp v. Crown Eurocars, Inc., 654 So.2d 1158, 1160 (Fla.1995). Thus, Florida has articulated a policy of not punishing employers by way of imposition of punitive damages absent a showing that the employer itself was at fault, even if such fault amounts only to ordinary negligence. Id. Nothing in the record of this litigation supports even an inference that American Airlines' liability is predicated on any fault of its own. Thus, barring American Airlines' contribution claims would contravene Florida's explicit policy regarding vicariously liable tortfeasors in the area of punitive damages.
Another relevant consideration is the fact that Article 25, Section 2, of the Warsaw Convention, which eliminates the cap on damages for "wilful misconduct" specifically states that "the carrier shall not be entitled to avail himself of [the provisions of the Convention], if the damage is caused under the same circumstances by any agent of the carrier acting within the scope of his employment." 49 Stat. 3000, reprinted at, 49 U.S.C. § 40105. Judge Marcus's attribution of liability to American Airlines is wholly predicated on Section 2 of Article 25. It is interesting to note that the drafters of the Warsaw Convention took the trouble to specifically include vicarious liability as an alternative means of lifting the cap on the damages limitation imposed by the Convention. The silence of Florida's legislature on this issue in enacting UCATA might be interpreted, in light of the common law developments, as a presumption that vicariously liable tortfeasors are not subject to the statutory bar.
Finally, the Court discusses In re Air Crash at Detroit Metro. Airport, 791 F.Supp. 1204 (E.D.Mich.1992), aff'd, 86 F.3d 498 (6th Cir.1996), a case upon which Honeywell and Jeppesen have relied for the proposition that *1352 a finding of willful misconduct under the Warsaw Convention is sufficient to bar a contribution claim. In Detroit Metro, the court applied the Michigan Contribution Act, which, as construed by Michigan Courts, bars a willful or intentional tortfeasor's contribution claims. The Court interpreted the jury's finding that the airline carrier "engaged in willful and wanton misconduct under Michigan and federal law [as] synonymous with, and the equivalent of, a willful or intentional wrongdoer under Michigan law." Id. at 1226. It is obvious from the quoted language, and the verdict form attached to the opinion, that the jury made a finding of "willful and wanton" misconduct under Michigan law independently of its finding with regard to federal law. Thus, the Detroit Metro court had no need to rely on the latter finding to decide the contribution issue. Moreover, it appears from the appellate opinion in the same case, In Re Air Crash Disaster, 86 F.3d 498, 537-38 (6th Cir.1996), that the record supported a finding of actual, as opposed to vicarious liability, by the carrier. Therefore, the Court concludes that Detroit Metro provides no guidance for this litigation.

CONCLUSION
Based on the foregoing considerations, it is
ORDERED AND ADJUDGED that Third Party Defendants Jeppesen Sanderson, Inc.'s and Honeywell, Inc.'s respective motions for summary judgment are DENIED. In light of this determination, the Court need not address the viability of American Airlines' claims for legal and equitable subrogation.
NOTES
[1] On October 9, 1997, Judge Marcus issued an Amended Order Granting Motions for Summary Judgment. The amendment did not affect the substantive rulings contained in the earlier order.
[2] At that point, damages trials in the first five passenger "exemplar" cases had been scheduled for the first three months of 1998.
[3] With regard to Cases No. 96-263 and 97-1443, the Court notes that the third party complaints were originally filed in Cases No. 97-1945 and 97-8351, respectively. By order dated November 25, 1997, the undersigned dismissed without prejudice Cases No. 97-1945 and 97-8351 for consolidation with Cases No. 96-263 and 97-1443, respectively. The Court further ordered that the third-party claims originally filed in the dismissed cases would be deemed filed in the surviving cases.

Earlier in the litigation, Judge Marcus had denied American Airlines' motion to implead Honeywell and Jeppesen due to the imminence of the liability trial. (Order, issued on June 13, 1997, at 4-22.) In the five cases that are the subject of this order, which were filed at a later stage than the majority of the cases, American Airlines brought its third party claims as of right.
[4] American Airlines asserts claims for negligence, strict liability and breach of warranty against both Honeywell and Jeppesen.
[5] Specifically, Judge Marcus concluded "that the undisputed facts, and the many points conceded by American, simply leave no room for a reasonable jury to find that the pilots' deliberate decision to continue to descend the aircraft from an off course position at night, in an environment known for high terrain, and despite the unequivocal warning of their training that `most of the aircraft that have hit the mountains in Latin America did so because the crew apparently did not know where they were' was anything other than an act of willful misconduct  whether we examine the state of mind of the pilots or simply the myriad clues that told them just how far, and how dangerously, off course Flight 965 had traveled." (Amended Order Granting Motions for Summary Judgment, at 117.)
[6] As in Allegheny, the United States was sued pursuant to the Federal Tort Claims Act due to the involvement of employees of the Federal Aviation Administration.
[7] In that order, Judge Marcus did not substantively address the cases that were filed in jurisdictions outside of Florida and transferred to this forum by the Judicial Panel on Multidistrict Litigation. However, in cases where the parties were in agreement regarding the applicable law, he accepted and adopted such stipulations. As a result, some of the transferred cases are governed by the laws of Massachusetts, Missouri, Illinois and California. In several other transferred cases, Judge Marcus adopted American Airlines' unopposed proposals for choice of law, resulting in the selection of the laws of Illinois, Florida and Colombia. Finally, in a small number of cases where the issue was contested, Judge Marcus reserved ruling and the issue appears to remain open. (Order on Choice-of-Law Issues Regarding Compensatory Damages, at 2-3 n. 2.)

Judge Marcus found no need to address the cabin crew cases based on American Airlines' agreement that Florida law applies to the issues of liability and, by logical inference, to damages, in those cases. (Order on Choice-of-Law Issues Regarding Compensatory Damages, at 1 n. 1.)
[8] This is American Airlines' alternative to its first choice, "federal common law," which the Court has rejected.
[9] American Airlines' principal place of business is in Texas. Jeppesen's principal place of business is in Colorado. Honeywell claims that, with respect to the Flight Management Computer, its principal place of business is in Arizona. All three entities are incorporated under the laws of Delaware.
[10] The Court observes, however, that during oral argument, Honeywell retreated from this position and strongly advocated application of Arizona, rather than Florida, law.
[11] Among the cases cited by the Lincenberg court in support of this proposition is the previously discussed George's Radio v. Capital Transit Co., 126 F.2d 219 (D.C.Cir.1942).
[12] As originally adopted, Florida's UCATA followed the model Act in requiring that "the entire liability [be] allocated evenly among tortfeasors, except where equitable principles call for some variance of that formula." F.H.W. & C. v. American Hosp. of Miami, 575 So.2d 1300, 1303 (Fla. 3d DCA), review dismissed, 582 So.2d 622 (Fla. 1991). "In 1976, the legislature amended [the pro rata share allocation scheme] to provide for consideration of relative degrees of fault in determining pro rata shares. Under that amendment to the act, no longer is the entire liability allocated evenly among the tortfeasors as a starting point but rather it is allocated based upon relative degrees of fault." Id. at 1303-04.
[13] In reaching this conclusion, Judge Marcus examined the pilots' conduct from the point of view of "objective recklessness" as well as by considering their state of mind.