**In re Willis E. HARTMAN, Debtor.**

**CHICAGO TITLE INSURANCE COMPANY, Plaintiff,**

v.

**Willis HARTMAN; and D. Michael Case, Trustee, Defendants.**

**Bankruptcy No. 87–11805.**
**Adv. No. 87–0309.**
**Civ. No. 88–1621–K.**

United States District Court, D. Kansas.

April 3, 1989.

Linda S. Parks, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for plaintiff.

Paul B. Swartz, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff Chicago Title Insurance Company brought a complaint in the pending bankruptcy proceeding, *In re Willis E. Hartman*, Bankruptcy Case No. 87–11805, to determine dischargeability of claims against the debtor, Willis D. Hartman. Chicago Title contended in its complaint that the claims, representing amounts paid by it to a judgment creditor of Hartman, represent nondischargeable claims, and that it was entitled to pursue these claims through subrogation. Debtor Hartman moved for summary judgment, contending that the claims were dischargeable and that Chicago Title had been required to pay the claims only through its own negligence.

On October 14, 1988, the bankruptcy court granted summary judgment. The court found that Chicago Title was not entitled to assert these claims through subrogation, and that, in any event, most of the claims were dischargeable. Chicago Title appeals from this decision.

A hearing on the present appeal was held on March 23, 1989, and the court announced its decision at that time. Consistent with its decision at the hearing and for the reasons set forth herein, the decision of the bankruptcy court is affirmed in part and reversed in part.

### Findings of Fact

In June, 1984, Hartman Homes, Inc. filed suit against Steven and Nola Foulston in Sedgwick County District Court, seeking sums due under a written contract for the construction of a house for the Foulstons. The Foulstons filed a counterclaim and a cross-claim against Willis E. Hartman. The Foulstons alleged they had received a substandard home, through Hartman's fraud, failure to appropriately supervise construction of their home, and tortious interference with their contractual relations with third persons.

After a trial of the matter, the jury reached a verdict which was filed in Sedgwick County District Court on May 29, 1986. The verdict denied the Foulstons' fraud claim, but found for the defendant Foulstons on the remaining counts. The jury found that the Foulstons had sustained $7,000.00 in actual damages under the tortious interference with contract count. In addition, the jury awarded $3,800.00 in actual damages and $75,000.00 in punitive damages on the failure to supervise count. The filing of the jury verdict created a lien on real property owned by Hartman in Sedgwick County, Kansas, pursuant to K.S.A. 60–2202(a) (1984 Supp).

Hartman Homes subsequently sold homes located in Sedgwick County to Darrell Lee and Chrystal S. Collins, and to

Danny R. and Alice L. Claycomb. In February, 1987, Chicago Title issued commitments for title insurance to the Collinses and the Claycombs. The title insurance commitments failed to mention or except from coverage the prior lien of the Foulstons. The following month, Steven Foulston executed upon the earlier judgment by service of a general execution on the Collins and Claycomb homes. Chicago Title satisfied the judgment lien and received an assignment of judgment from the Foulstons.

On June 25, 1987, Willis Hartman filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code. Chicago Title subsequently filed a complaint seeking to determine the dischargeability of the assigned judgment under 11 U.S.C. § 523(a)(6). By a memorandum of decision filed October 14, 1988, the bankruptcy court found that Chicago Title was not entitled to subrogation and that the main portion of the judgment was dischargeable under § 523(a)(6). Chicago Title filed its notice of appeal on October 24, 1988.

*Conclusions of Law*

In an appeal from the decision of a bankruptcy court, the reviewing court is bound by the factual findings of the bankruptcy court unless the findings are clearly erroneous. The legal conclusions of the bankruptcy court, however, are subject to *de novo* review. *In re Herd*, 840 F.2d 757, 759 (10th Cir.1988).

■ In the present case, the bankruptcy court concluded that Chicago Title was not entitled to pursue the Foulston claims against the debtor through subrogation. The court found that Chicago Title had failed to establish its right to equitable subrogation under the requirements summarized in *In re Flick*, 75 B.R. 204 (Bankr. S.D.Cal.1987). In *Flick*, the court recognized five prerequisites to equitable subrogation:

(1) Payment must have been made by the subrogee to protect his own interest.

(2) The subrogee must not have acted as a volunteer.

(3) The debt paid must be one for which the subrogee was not primarily liable.

(4) The entire debt must have been paid.

(5) Subrogation must not work any injustice to the rights of others.

75 B.R. at 208 (citing *Simon v. United States*, 756 F.2d 696, 699 (9th Cir.1985).

The bankruptcy court found that Chicago Title satisfied only the first, second, and fourth of these requirements. It concluded that the third element was not established since "Chicago Title was primarily liable to its insureds." (Memorandum Opinion, at p. 12.) In addition, the court found that subrogation would work an injustice to the rights of others since the obligation of Chicago Title to pay the Foulstons arose only through its own negligence.

In its appeal, Chicago Title contends that the bankruptcy court erred, and that it is entitled to equitable subrogation and conventional subrogation. Chicago Title contends it is conventionally subrogated to the Foulstons' judgment claim, based upon the assignment of judgment granted by the Foulstons. The opinion of the bankruptcy court does not address the principle of conventional subrogation, and deals only with the alternative principle of equitable subrogation. Because Chicago Title is entitled to equitable subrogation, it is unnecessary to discuss whether it is also entitled to conventional subrogation.

Equitable subrogation must be permitted in the present case since the claim to which Chicago Title seeks subrogation was not one for which it was primarily liable, and since subrogation would not work an injustice to the rights of others. Equitable subrogation arises by operation of law rather than by contract, and is designed to give "to a third person who has been compelled to pay a remedy against one who, in justice ought to pay." *Insurance Co. of N. America v. Medical Protective Co.*, 768 F.2d 315, 320 (10th Cir.1985). The Kansas Supreme Court summarized the nature of subrogation in *Fenly v. Revell*, 170 Kan. 705, 228 P.2d 905 (1951), noting that the doctrine

is a creature of equity invented to prevent a failure of justice and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience ought to be discharged by the latter.

170 Kan. at 708, 228 P.2d 905 (citations omitted). The court also noted that although the doctrine of subrogation initially received only narrow application, it has become increasingly liberalized so that it is now "a favorite of the law and applied to almost every kind of a situation where it will subserve the ends of justice and equity." *Id.*, at 709, 228 P.2d 905. *See also Chicago, R.I. & Pac. R.R. v. United States,* 129 F.Supp. 637, 639 n. 6 (D.Kan.1955) (citing *Fenly* ).

In the present case, the bankruptcy court found that the third of the five considerations listed in *Flick* was not satisfied, stating: "Clearly the title insurance issued by Chicago Title covered the Foulston judgment; thus, Chicago Title was primarily liable to its insureds." (Memorandum Opinion, at p. 12.) This is correct, but irrelevant. While Chicago Title may have been primarily liable to its insureds, it is not this debt to which it seeks subrogation. Instead, Chicago Title claims subrogation to the Foulstons' tort judgment against the debtor Hartman. For this obligation, Hartman alone was primarily liable. Both Chicago Title and its insureds possessed only secondary (or, in the case of Chicago Title, tertiary) liability.

Nor does it appear that permitting Chicago Title to pursue its claim through subrogation would work an injustice on any party. The bankruptcy court correctly found that the failure to include the Foulston judgment in the Collins and Claycomb title insurance commitments was the result of the negligence of Chicago Title. Chicago

Title's agent had noted and excepted the Foulston judgment from a prior title insurance commitment, and therefore had knowledge of the judgment.

However, while Chicago Title may have been negligent in failing to list the Foulston judgment on the two subsequent title insurance commitments, equity requires a balancing of this failure against the conduct of the debtor Hartman. The error of Chicago Title in failing to include the Foulston judgment on the title insurance commitments is far less culpable than the actions of the debtor Hartman which underlie the judgment itself. Subrogation may be adverse to the interests of the debtor Hartman, but it will not work an injustice as that term is used in *Flick,* 75 B.R. at 206.

What is important in this context is that subrogation should not be permitted where it will cause an injury to innocent third parties. *Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co.,* 303 F.2d 692, 697 (5th Cir.), *cert. denied,* 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962) (quoting 50 Am.Jur. *Subrogation* § 17, at 693). Hartman, who failed to adequately supervise the Foulston construction contract and tortiously interfered with the Foulstons' contractual relations, does not fit into the class of innocent third persons. Weighing the equities between the parties, subrogation should be permitted.[1] The Foulston judgment against Hartman is an obligation which in equity and good conscience ought to be borne by the debtor Hartman, not Chicago Title.

■ Chicago Title contends in its complaint—and in the current appeal—that the claims forming the Foulston judgment represent claims not dischargeable in bankruptcy under 11 U.S.C. § 523(a)(6) (1982). Section 523(a)(6) denies discharge under the Bankruptcy Code for any debt "for willful

1. In support of its decision not to permit subrogation, the bankruptcy court also cites two decisions in which courts have held that the negligence of a title insurer acted as a subsequent bar to the insurer's subrogation. *US Life Title Ins. Co. v. Romero,* 98 N.M. 699, 652 P.2d 249 (Ct.App.), *cert. quashed,* 98 N.M. 762, 652 P.2d 1213 (1982); and *Coy v. Raabe,* 69 Wash.2d 346, 418 P.2d 728 (1966). In both cases, however, the insurer sought subrogation against an innocent third party, not an adjudged tortfeasor, as in the present case.

and malicious injury by the debtor to another entity or to the property of another entity."

The Tenth Circuit has addressed the issue of dischargeability under § 523(a)(6) in *In re Compos*, 768 F.2d 1155 (10th Cir. 1985). In *Compos*, the court found that "willful," as that term is used in § 523(a)(6), means "deliberate or intentional." 768 F.2d at 1158. The court expressly rejected the argument that a "reckless disregard" satisfies the requirements of § 523(a)(6). *Id.*

Applying the *Compos* standard to the present case, the bankruptcy court correctly determined that only that portion of the Foulston judgment representing damages for tortious interference with contractual relations was not dischargeable under § 523(a)(6). The Sedgwick County District Court's instructions to the jury permitted a finding for the Foulstons only if the jury found

1. The existence of a contract between Steve Foulston and a third party.

2. Actual or constructive knowledge of the contract by Willis Hartman and Hartman Homes, Inc.

3. Intentional acts by Willis Hartman individually and on behalf of Plaintiff inducing a third person to breach the contract with Steve Foulston.

4. Such acts constituting the proximate cause of the breach.

5. Damages suffered by Steve Foulston as a direct result of the actions of Willis Hartman individually and on behalf of Hartman Homes, Inc.

The bankruptcy court properly found that the jury award of actual damages in the amount of $7,000.00 is not a debt dischargeable in bankruptcy. The jury's verdict against Hartman required a finding that he intentionally induced a third party (who he knew to have a contract with Foulston) to breach the contract. Under § 523(a)(6), as interpreted in *Compos*, this obligation is not subject to discharge under the Code.[2]

The bankruptcy court also correctly determined that the jury award of $3,800.00 in actual damages and $75,000.00 in punitive damages for failing to adequately supervise the contract is a debt dischargeable under the Code. The instructions to the jury on the adequate supervision claim contained no intent requirement. The punitive damage instruction permitted the award of such damages if the jury found conduct which "was willful or wanton or constituted fraud or was malicious." The instructions define a "wanton act" as an act "performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequence of the act."

Neither portion of the award for failure to supervise the contract satisfies the standard established in *Compos*. The actual damages portion of the award does not reflect any inherent determination of the willfulness of the debtor Hartman's actions. The punitive damages portion of the

---

**2.** The bankruptcy court properly rejected arguments by the debtor Hartman that the tortious interference claim was dischargeable. Hartman argued that the failure of the jury to award punitive damages reflected a determination that his actions were not willful or wanton, with regard to the tortious interference claim. The jury instructions, however, merely informed the jury that it was permitted to award punitive damages if it found willfulness, not that it was required to do so.

Hartman also argued that the instructions on the tortious interference claim did not expressly require an intent to injure Foulston, and thus fails to satisfy the requirements of *Compos*. The Tenth Circuit has recently discussed the "malicious" requirement of § 523(a)(6) in *C.I.T.*

*Financial Services, Inc. v. Posta*, 866 F.2d 364 (10th Cir.1989). In *Posta*, the court recognized that maliciousness under the section requires more than willfulness, which may be satisfied by proof the debtor intentionally performed the acts which caused the creditor's injury. However, the court also noted that malicious intent is not limited simply to proof of an intent to injure. It may also be "demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights." *Id.*, 866 F.2d at 367. This is precisely the case here—the jury was required to find that Hartman knew of Foulston's contract rights with third parties, and that he intentionally damaged those rights.

award may have been premised on recklessness, rather than willfulness, and thus must be considered a dischargeable debt under *Compos.* A creditor objecting to discharge under § 523(a)(6) has the burden of proving by clear and convincing evidence that the debtor's actions were willful and malicious. *C.I.T. Financial Services, Inc. v. Posta,* 866 F.2d at 367 (10th Cir.1989).[3]

In the present appeal, Chicago Title stresses evidence introduced in the state court action which reflects the egregiousness of Hartman's failure to adequately supervise the contract. However, all of the evidence cited by Chicago Title could also support a finding of a reckless disregard for the adequate performance of the contract, rather than willfulness. Because the appellant has failed to meet its burden to demonstrate the willfulness of the debtor's action, the bankruptcy court's decision regarding the dischargeability of the various debts must be affirmed.

IT IS ACCORDINGLY ORDERED this 3 day of April, 1989, that the portion of the bankruptcy court's order denying subrogation is reversed; otherwise, the order of the bankruptcy court is affirmed.

---

**3.** Chicago Title has suggested that the Tenth Circuit's rejection of recklessness as a basis for a finding of nondischargeability under *Compos* has been modified by the court's subsequent decision in *Posta.* In *Posta,* the court held that the "malicious" requirement of § 523(a)(6) did not require proof of actual malice, but could be satisfied by demonstrating that the debtor could reasonably foresee that his actions would cause injury to his creditor. 866 F.2d at 367.

The court did not, however, modify the *Compos* standard which deals with the "willfulness" requirement of § 523(a)(6), finding that the creditor had successfully demonstrated the willfulness of the debtors' actions. Indeed, citing *Compos,* the court restated the rule that "acts caused by the debtor's negligence or recklessness are not encompassed" by § 523(a)(6). 866 F.2d at 367 (citing *In re Compos,* 768 F.2d at 1158; *In re Egan,* 52 B.R. 501, 506 (Bankr.D. Minn.1985)). In the present case, the claims representing the punitive damages awarded Foulston are dischargeable, since the appellant has failed to satisfy the willfulness standard established by *Compos* and reaffirmed by *Posta.*