In re The **CELOTEX CORPORATION,**
**et al., Debtor.**

**The Celotex Corporation and Carey**
**Canada, Plaintiffs,**

v.

**Allstate Insurance Company,**
**et al., Defendants.**

**Bankruptcy Nos. 90–10016–**
**8B1, 90–10017–8B1.**
**Adversary No. 92–584.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 10, 2003.

Jeffrey W. Warren, Tampa, FL, for The Celotex Corporation and Carey Canada.

William K. Zewadski, Tampa, FL, for Fibreboard Corporation.

## ORDER ON CELOTEX CORPORATION AND FIBREBOARD'S MOTIONS FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Chief Judge.

At the time of the filing of the Chapter 11 Petition in this case, there were numerous appeals in other courts emanating from adverse bodily injury judgments against the Debtor and other Co–Defendants. The Debtor filed supersedeas bonds in those appeals to protect its assets from post-judgment levy, et al. Because of the imposition of the automatic stay, the appellate cases were halted. This Court was then presented with two distinct issues regarding those appeals: first, the modification of the automatic stay to complete the pending appeals, and second, the necessity to maintain the supersedeas bonds once the automatic stay was in effect. This Court determined the supersedeas bonds were property of the estate.[1]

---

1. *In re Celotex Corp.* 128 B.R. 478, 484–85 (Bankr.M.D.Fla.1991). Stating:

   1. The supersedeas bond is property of the estate as long as the appellate process upon which it is based is proceeding, and the automatic stay of Section 362 applies to any action to enforce a judgment against the supersedeas bond.

2. Where this Court has granted relief from the stay to complete the appellate proceedings involving Debtor and the appellate process has concluded in favor of the judgment creditor, that judgment creditor is precluded from proceeding against any supersedeas bond without first seeking to vacate the Section 105 stay in this Court.

In addition to resolving the issue of the supersedeas bond and judgment creditors seeking relief from the automatic stay and § 105 [2] injunction imposed to protect the supersedeas bonds, this Court required the Debtor to file this adversary proceeding to challenge the validity of any judgment of a supersedeas bond judgment creditor.[3] That order, which denied various creditors from seeking relief from the § 105 stay, also required the Debtor to establish a reserve account into which it would place funds to secure these judgment creditors' claims if their supersedeas bonds became insufficient to protect their judgments during this litigation.[4]

In those appellate cases where supersedeas bonds were filed but the appeals were not concluded, the automatic stay and the § 105 stay were modified to allow the appellate courts to issue their opinion and mandate. Where the Debtor was successful on the appeal, any funds arising from the release of the supersedeas bond were also required to be placed in the reserve account to protect the remaining judgment creditors' supersedeas bonds. Debtor, through this adversary proceeding, was also given the opportunity to challenge the claims of any insurance company which had participated in the issuance of supersedeas bonds, as well as any creditor which may claim a right to any bond proceeds.

Ultimately, all the issues in this adversary proceeding dealing with judgment

---

3. Where at the time of filing the petition, the appellate process between Debtor and the judgment creditor had been concluded, the judgment creditor is precluded from proceeding against any supersedeas bond posted by Debtor without first seeking to vacate the Section 105 stay entered by this Court.
See also, Celotex Corp. v. Edwards, 514 U.S. 300, 310–13, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

2. Throughout this opinion all references to Bankruptcy Code sections appear without citation to 11 U.S.C.

3. In re Celotex Corp., 140 B.R. 912, 917 (Bankr.M.D.Fla.1992).

4. Id. Stating:
1. Within 30 days of the entry of this Order, Debtor shall provide the Court with a report listing all judgment creditors protected by supersedeas bonds, the amount of each judgment, the amount of each supersedeas bond, the surety for each bond, and the collateral for each bond.
2. Debtor shall set out in the report whether any supersedeas bond protecting any judgment was insufficient, as of the date of filing the petition, to cover the judgment amount and interest allowed by law.
3. If any supersedeas bond is insufficient or will become insufficient to protect completely any judgment affirmed on appeal through confirmation of the plan, Debtor, within 30 days of filing the report, shall create an interest–bearing reserve account or increase the face amount of any supersedeas bond to cover the full amount of any judgment through confirmation. Such reserve account, if established, shall be disbursed only upon order of this Court.
4. Notwithstanding Debtor's obligation, any surety of Debtor whose collateral is capable of bearing interest shall establish an escrow account which bears interest at the highest prevailing rate allowed by law. In no case, however, shall the supersedeas bond, or subsequent protection under this Order, be less than the amount of the judgment plus interest. The Court reserves jurisdiction to determine whether the interest accruing in the escrow account shall be for the benefit of the judgment creditors, the surety, or Debtor. No funds shall be disbursed from such escrow account without order of this Court.
5. Debtor shall classify any claim of judgment creditors whose judgments are protected by supersedeas bonds in a separate class in its Chapter 11 plan. Notwithstanding the classification, Debtor shall provide for such creditors' allowed claims to be paid in full unless otherwise agreed by the judgment creditor, individually, or determined by this Court.

creditors, supersedeas bonds, and issues associated with insurance companies' interest in the bonds have been resolved except one—the claim of Fibreboard. In a number of pre-petition asbestosis bodily injury lawsuits, Fibreboard and Celotex were joint judgment defendants. Subsequently, Fibreboard purchased and was assigned bodily injury judgments against itself and Celotex.[5] Fibreboard now seeks to be paid out of the remaining funds in the reserve account held for the supersedeas judgment creditors under the theory of subrogation. The parties have directed the Court's attention to a number of methods of analysis; nonetheless, there are three observational viewpoints:

a. Under § 502(e)(1)(A) of the Bankruptcy Code (contribution);

b. Under § 509 of the Bankruptcy Code (subrogation); and

c. Under state law within the context of either contribution or equitable subrogation.

This Court has considered all arguments and evidence consistent with a ruling on a motion for summary judgment. In considering whether summary judgment is warranted, this Court adheres to the standards set forth by the United States Supreme Court. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(holding the standard of proof in summary judgment rulings is the same as it would be at trial); *Celotex v. Catrett,* 477 U.S. 317, 323–35, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(discussing the appropriate burdens of proof and types of evidence to use in summary judgment decisions); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(detailing the elements of summary judgment analysis). The Court finds no genuine issue of material fact exists, and the findings on the issues discussed below are correct as a matter of law.

## DISCUSSION

### 1. *CONTRIBUTION— § 502(e)(1)(A).*

When there are two or more parties bound in the same degree by a common burden, equity demands, as between themselves, that each shall discharge a proportionate share, and when one of such parties has actually paid or satisfied more than his fair share of the burden, he is entitled to a contribution

5. —

| Original Plaintiff (Reference ¶ in Complaint) | Compensatory Judgment Amount | Judgment Date | Bond Amount (Surety) | Date Bond Posted | Date Fibreboard Paid | Amt. Pd. by Fibreboard for Celotex |
|---|---|---|---|---|---|---|
| Elizabeth Syverson (¶ 124) | $91,571.93 | 6/26/89 | $125,000.00 Allstate | 9/09/89 | 8/18/91 | $57,389.98 |
| Arthur Nelson (¶ 133) | $290,250.00 | 8/14/89 | $350,000.00 Allstate | 6/27/89 | 11/16/96 | $150,000.00 |
| Marlene Bowers (¶ 24) | $189,198.89 | 9/22/89 | $258,520.18 Allstate | 10/4/90 | 1/26/93 | $45,476.83 |
| Elbert Eldredge (¶ 25) | $260,311.61 | 9/22/89 | $355,681.07 Allstate | 10/4/90 | 1/26/93 | $62,569.78 |
| The Poole Group (¶ 87) | $3,182,169.50 | 11/1/89 | $4,837,715.70 National Union | 2/2/90 | 7/8/93 | $263,118.22 |
| The Williams Group (¶ 88) | $576,000.00 | 11/1/89 | $1,385,375.40 National Union | 2/2/90 | 7/8/93 | $50,933.79 |

from each ... in order to reimburse him for the excess paid over his share ....

2 Pomeroy, John N., *Equitable Remedies,* § 915 at 1481 (1905); *See In re Charter Co.,* 81 B.R. 644, 646 (M.D.Fla.1987); Fla. Stat. Ch. 768.31(2)(b)(2002). There was an exception for joint tortfeasors. A wrongdoer could not seek equitable relief because there was no right to contribution between joint tortfeasors. *See In re Air Crash Near Cali, Colombia,* 24 F.Supp.2d 1340, 1343–44 (S.D.Fla.1998)(discussing origin of rule in *Merryweather v. Nixan,* 101 Eng.Rep. 1337 (K.B.1799)); 2 Pomeroy, John N., *Equitable Remedies,* § 916 at 1484 (1905). While Florida law originally adhered to the common law view of no contribution between joint tortfeasors, this position began to change. *Lincenberg v. Issen,* 318 So.2d 386, 391–93 (Fla.1975), *reh'g denied* October 8, 1975. Ultimately, the Uniform Contribution Among Tortfeasors Act (UCATA) was adopted by most states, including Florida. *Lincenberg* at 391. Therefore, a joint tortfeasor was capable of obtaining contribution. *See* Fla. Stat. Ch. 768.31(2)(a) (2002); *Air Crash Near Cali,* 24 F.Supp.2d at 1347–49.

■ Thus, in bankruptcy law, it could be argued that now a joint tortfeasor would be able to obtain contribution. For a contribution claim to be allowed, the claimant would have to satisfy a mutual debt with the debtor. The Code, interestingly enough, phrases such right in the negative. "... [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor ..." [6] when the underlying creditor's claim is otherwise disallowed, when the entity's claim is contingent, or where

the claimant asserts a right of subrogation under § 509. Section 502(e).

As to joint tortfeasors, one court has said [t]he short answer to [a claimant's] assertion that nothing in the code or the legislative history reflects an intention that section 502(e)(I)(B) apply to disallow the contingent claim of a joint tortfeasor is that the subsection itself suggests that the joint tortfeasor's claim is within its embrace. Th[is] section disallows a contingent claim for "contribution," a concept clearly associated with the law of torts. And it disallows the claim of "an entity that is liable with the debtor" not merely an entity that is contractually liable with the debtor.

*Berliner Handels-Und Frank–Furter Bank v. East Texas Steel Facilities, Inc. (In re East Texas Steel Facilities, Inc.),* 2000 WL 340281 *3 at n. 9 (N.D.Tex.2000)(quoting in part *In re Wedtech Corp.,* 87 B.R. 279, 283 (Bankr. S.D.N.Y.1988)). Therefore, Fibreboard's contribution claims being noncontingent, it could be allowable under Florida law and, therefore, arguably under § 502.[7] Finally, the Bankruptcy Code would have a court disallow the claimant's contribution claim where the claimant "asserts a right of subrogation"—an election to have the claim treated under § 509(a) of the Code. *In re Baldwin–United Corp.,* 55 B.R. 885, 895 (Bankr.S.D.Ohio 1985); *see In re DiSanto & Moore Assocs., Inc.,* 41 B.R. 935, 940 (N.D.Cal.1984).

■ Fibreboard has made that election; nonetheless, a quick sojourn over the bankruptcy contribution remedy will enlighten the analysis between the two remedies of contribution and subrogation. First, the term "liable with the debtor" in

---

6. Section 502(e).

7. This Court takes the view that if § 502(e)(1)(A) is to be construed broadly it

must include state law concepts of reimbursement. *Lincenberg,* 318 So.2d at 391–94.

§ 502(e)(1) connotes a wide spectrum of co-obligors, far beyond the mere guarantor or surety. *Wedtech,* 87 B.R. at 287; *Baldwin–United,* 55 B.R. at 890–91.[8] Second the "reimbursement or contribution" language also found in § 502(e)(1) encompasses every possible right to compensation for paying the debt of another and would include tortfeasors. Similarly, this section is not limited to claims arising only under contract. *Wedtech,* 87 B.R. at 287–88; *Baldwin–United,* 55 B.R. at 891. "The right to contribution, where one person discharged more than his just share of a common burden, did not arise from contract, but had its foundation in, and was controlled by, principles of equity and natural justice." *Baldwin–United,* 55 B.R. at 891–92 (quoting *Pension Benefit Guaranty Corp. v. Tenn–Ero Corp., et al. (In re Tenn–Ero Corp.),* 14 B.R. 884, 891 (Bankr. D.Mass.1981)). Third, the entity asserting the contribution claim has a claim only as good as the creditor from whom he obtained it. Thus, where an entity has paid a claim of itself and the debtor which arose from a statutory remedy, such a co-obligor would only have a right of contribution which was permitted under the statute. *See* § 502(e)(1)(A); *Juniper Development Group v. Kahn, et al. (In re Hemingway Transp., Inc.),* 105 B.R. 171, 175 (Bankr. D.Mass.1989); *Wedtech,* 87 B.R. at 287–8; *Baldwin–United,* 55 B.R. at 902; *see also In re Charter Co.,* 862 F.2d 1500, 1502 (11th Cir.1989).

▆ Thus, §§ 502(e)(1)(A) and (B) allow a party in interest to attack the underlying creditor's claim, *see In re Amatex Corp.,* 110 B.R. 168, 170 (Bankr.E.D.Pa.1990); *Hemingway Transp., Inc.,* 105 B.R. at 176; *Wedtech,* 87 B.R. at 289, or to object to the contribution claim as still not discharged by the entity and thus contingent. *Hemingway Transp., Inc.,* 105 B.R. at 174;

*Wedtech,* 87 B.R. at 288; *Baldwin–United,* 55 B.R. at 895.

Almost all contribution claims, including those of joint tortfeasors, have been disallowed because they are contingent, notwithstanding the claimant's argument they had a direct claim and were not liable with the debtor and therefore the claim would not come within the exception of § 502 as a contingent claim. *See Wedtech,* 87 B.R. at 283, 288–90; *In re Charter Co.,* 81 B.R. 644, 645–47 (M.D.Fla.1987) aff'd 862 F.2d 1500 (11th Cir.1989). These claimants lose because the terms in § 502 such as "liable with the debtor" and the terms "reimbursement or contribution claim" have been determined to be extremely inclusive and do not have to be based on a specific co-obligor theory, or on an adjudication of joint liability. *Amatex Corp.,* 110 B.R. at 171.

As to Fibreboard, it has been adjudicated liable with the debtor. The amount of damages was liquidated by judgment; thus, there is no question of a contingent claim if Fibreboard was seeking contribution. By its own evidence, Fibreboard did not pay the entire underlying judgment of the supersedeas bond creditors, but the payment was sufficient to discharge the judgment creditor's claim against itself and Celotex. Yet, Fibreboard rejects contribution and elects, as it has a right to do under §§ 502(e)(1)(C) and 509(a), to assert a claim for subrogation. Fibreboard's election may be predicated on the belief that allowance of its contribution claim might be limited to its payment to the supersedeas bond judgment creditors in excess of its own claim to those creditors. Conversely, if their subrogation claim was allowed, they might be entitled to the same status any supersedeas bond judgment

---

**8.** The same claimant requirement, "liable   with the debtor," appears in § 509(a).

creditor would have to the reserve account established by this Court.

### 2. SUBROGATION

When an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in performance of a legal duty, or for the protection of a legal right, or at the request of the party ultimately bound, and even in certain other cases, favored by public policy, ... the party thus discharging the obligation is entitled in equity to demand, for his reimbursement, and subject to any superior equities, the performance of the original obligation, and the application thereto of all securities and collateral rights held by the creditor. The same equity which seeks to prevent the unearned enrichment of one party, at the expense of another ... operates here ....

2 Pomeroy, John N., *Equitable Remedies,* § 920 at 1492 (1905). Fibreboard made its election under § 502(e)(1)(C) to have its claim characterized as one of subrogation under § 509(a) of the Bankruptcy Code. Thus, Fibreboard foregoes its contribution claim. *Old Republic Surety Co. v. Richardson (In re Richardson),* 193 B.R. 378, 380 (D.D.C.1995); *Towers v. Moore (In re DiSanto & Moore Associates, Inc.),* 41 B.R. 935, 940–41 (N.D.Cal.1984); *In re Microwave Products of America, Inc.,* 118 B.R. 566, 573–74 (Bankr.W.D.Tenn.1990); *In re Trasks' Charolais,* 84 B.R. 646, 650 (Bankr.D.S.D.1988). While generally viewed as an equitable remedy, in general business milieu, conventional subrogation has been a remedy that arises from contract. *Hamada v. Far East National Bank (In re Hamada),* 291 F.3d 645, 649 (9th Cir.2002); Baynes, Thomas E., *Florida Mortgages,* Chap. 17–1 (West Group 1999); **Restatement (Third) of Restitution,** § 26 commentary at 140–1 (Tentative Draft No. 2, 2002). Additionally, there are traditional legal relationships which engender subrogation such as surety, guarantors, and comakers. *Baldwin–United,* 55 B.R. at 891.

In the instant case, there is no basis in contract for reimbursement, therefore equity would prevent unjust enrichment and allow a party who pays the debts of another to seek subrogation. *American Surety Co. v. Bethlehem Nat. Bank,* 314 U.S. 314, 317, 62 S.Ct. 226, 86 L.Ed. 241 (1941); *Chicago Title Ins. Co. v. Hartman (In re Hartman),* 100 B.R. 46, 48–49 (D.Kan.1989); *Baxter v. Flick (In re Flick),* 75 B.R. 204, 206–07 (Bankr.S.D.Cal. 1987); *In re Munzenrieder Corp.,* 58 B.R. 228, 231–32 (Bankr.M.D.Fla.1986). The often-stated generic criteria for equitable subrogation in bankruptcy are stated in *In re Kaiser Steel Corporation:*

> ... [S]ince subrogation is a principle of equity, jurisprudence requires satisfaction of a five part test. The test requires that (1) the codebtor must have made payment to protect his own interests; (2) the codebtor must not have been a volunteer; (3) the payment must satisfy a debt for which the codebtor was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to rights of others.

*Bank of America Nat'l Trust & Sav. Ass'n v. Kaiser Steel Corp. (In re Kaiser Steel Corp.),* 89 B.R. 150, 152 (Bankr.D.Colo. 1988); *see also CCF, Inc. v. First Nat'l Bank & Trust Co. (In re Slamans),* 69 F.3d 468, 472 at n. 2 (10th Cir.1995); *In re Erin Food Services, Inc.,* 980 F.2d 792, 804 (1st Cir.1992); *In re Topgallant Lines, Inc.,* 154 B.R. 368, 382 (S.D.Ga.1993); *In re Valley Vue Joint Venture,* 123 B.R. 199, 203 at n. 7 (Bankr.E.D.Va.1991); *East Texas Steel,* 2000 WL 340281 at *3 at n. 6 (N.D.Tex.2000).

It is generally believed state law governs the application of equitable subrogation. *Hamada,* 291 F.3d at 651; *In re Cornmesser's,* 264 B.R. 159, 162–63 (Bankr.W.D.Pa.2001); *see also Topgallant Lines,* 154 B.R. at 382; *In re FJS Tool & Mfg. Co., Inc.,* 88 B.R. 866, 869–70 (Bankr. N.D.Ill.1988); *In re Previs,* 31 B.R. 208, 211–12 (Bankr.Wash.1983). As to the Florida law of subrogation, Fibreboard agrees that it should apply to this proceeding.[9] The state law criteria are similar to the law of equitable subrogation applied by bankruptcy courts relying on the *Kaiser Steel* decision. On two occasions, the Florida Appellate Courts dealt with the utilization of equitable subrogation within the tort context.

In *West American Ins. Co. v. Yellow Cab Co.,* the insurance company settled all claims against the cab company. 495 So.2d 204, 205 (Fla. 5th Dist.Ct.App.1986). The insurer then brought a contribution action against Yellow Cab. *Id.* However, because the jury found the insurance company was not jointly liable with the cab company, no contribution was allowed. *Id.* at 206. The Appellate Court, while agreeing with the denial of the contribution claim, found that the insurance company should be allowed to amend its pleadings to allege a claim in subrogation. *Id.*

> In the instant case, a cause of action for legal subrogation was fully supported by the evidence presented at trial. To protect itself and not as a volunteer, West American as insurer paid a debt in full which in equity should have been paid by Yellow Cab. The jury found that the payment was reasonable and that Yellow Cab was 100% at fault. Not permitting a recovery in this case because West American was found not to be at fault for the accident produces an inequitable and absurd result and would unjustly enrich Yellow Cab. All the elements of subrogation were tried. Only the pleading was missing and Rule 1.190(b) removes that omission as a barrier to recovery here.

*West American,* 495 So.2d at 207.

The Supreme Court of Florida in *Dade County School Board v. Radio Station WQBA, et al.,* 731 So.2d 638 (Fla.1999) adopted the holding in *West American.* Once again, the party settling the claims was found not to be jointly liable with the tortfeasor, thus precluding contribution. *Id.* at 641–42. A subrogation claim was then raised post-judgment. *Id.* at 641. While remanding the case back to the trial court to determine the applicability of either contract indemnification or equitable subrogation, the Supreme Court of Florida stated, *"West American* involves the prototypical case to which application of equitable subrogation in a tort context should be limited." *Id.* at 646. In both cases, the courts adopted the doctrine of equitable subrogation as labeled in Florida "legal subrogation." *Id.* at 647; *West American,* 495 So.2d at 207. In both cases, the party seeking subrogation, the subrogee, was not primarily liable with the debtor.

Fibreboard argued to this Court that section 26 of the American Law Institute's recently approved Tentative Draft No. 2 of the Restatement (Third) of Restitution supports Fibreboard's argument for subrogation as relates to joint tortfeasors. Sections 25 and 26 make it quite clear the requirements to be met in order to obtain equitable subrogation within the context of the Restatement. The claim known as "equitable subrogation" was different from a contribution claim set forth in Section 25 principally in that the claimant and the defendant are not joint obligors. This is made quite clear in Section 26 where, once

---

**9.** *See* Fibreboard's Mot. Partial Summ. J., at pp. 6–7, Docket No. 1004 (Feb. 14, 1994).

again, in distinguishing between contribution and subrogation the Restatement says:

> The principal difference is that the parties to a restitution claim within the scope of § 25 [contribution] are at the outset jointly and severally liable to the third person in the transaction, while § 26 [equitable subrogation] deals with claims between parties whose duties to the third person are not only independent but may be of different character and origin.

**Restatement (Third) of Restitution,** § 26 commentary at 140–1 (Tentative Draft No. 2, 2002).

It is quite clear that Fibreboard would not be successful as to its subrogation claim under the definitions found in the Restatement (Third) of Restitution.

As to subrogation under § 509 of the Bankruptcy Code, there is some decisional debate as to whether § 509 subrogation criteria are different from equitable subrogation. Subrogation under § 509 suggests the claimant need only be liable with the debtor and pay the common debt and thus be subrogated to creditors' rights. *Slamans,* 69 F.3d at 473; *In re The Medicine Shoppe,* 210 B.R. 310, 313–14 (Bankr. N.D.Ill.1997); *Cooper v. Cooper (In re*

*Cooper),* 83 B.R. 544, 546 (Bankr.C.D.Ill. 1988). *See also In re Bugos,* 760 F.2d 731, 734 (7th Cir.1984); *Bank of New Hampshire v. AGF Direct Gas Sales & Servicing, Inc. (In re AGF Direct Gas Sales & Servicing, Inc.),* 2002 WL 826817 at *3 (D.N.H.2002). The debate goes on as to whether § 509 preempts any other form of subrogation theory,[10] or whether equitable subrogation criteria are the test under § 509,[11] or whether equitable subrogation is an alternative method to § 509.[12] Then there are those cases that decide the issue of subrogation without acknowledging the existence of § 509. *In re Glade Springs,* 826 F.2d 440, 441–42 (6th Cir.1987); *In re New England Fish Co.,* 749 F.2d 1277, 1282 (9th Cir.1984); *Hartman,* 100 B.R. at 48–49; *Flick,* 75 B.R. at 206–07; *In re Cone Constructors, Inc.,* 265 B.R. 302, 306 (Bankr.M.D.Fla.2001); *Munzenrieder,* 58 B.R. at 231–32.[13]

### 3. *SEPARATE BUT NOT THE SAME.*

Fibreboard points to a series of decisions which have held § 509(a) is a separate and distinct form of subrogation from that established under state law such as equitable subrogation (i.e., the *Kaiser Steel* test), and argues this separate view of

---

**10.** *In re Spirtos,* 103 B.R. 240, 243–45 (Bankr. C.D.Cal.1989); *Creditors Comm. v. Commonwealth of Mass. Dept. of Rev.,* 105 B.R. 145, 151 (D.Mass.1989); *Cooper,* 83 B.R. at 546–47.

**11.** *Feldhahn v. Feldhahn,* 929 F.2d 1351, 1353–54 (8th Cir.1991); *Kaiser Steel,* 89 B.R. at 152.

**12.** *Slamans,* 69 F.3d at 472; *Topgallant Lines,* 154 B.R. at 382; *Spirtos,* 103 B.R. at 244; *Medicine Shoppe,* 210 B.R. at 313–14; *Cuda v. Nigro (In re Northview Motors, Inc.),* 202 B.R. 389, 400–01 (Bankr.W.D.Pa.1996); *FJS Tool,* 88 B.R. at 869–70.

It should be noted that several courts aired the debate and consider both tests as to the

claimants' subrogation rights. *See, e.g., East Texas Steel,* 2000 WL 340281 at *3–4; *Pandora Indus., Inc. v. Paramount Communications, Inc. (In re Wingspread),* 145 B.R. 784, 787–91 (S.D.N.Y.1992).

**13.** Fibreboard argues because so many cases decide subrogation issues without reference to § 509 that § 509 must have a different test. While this may be true, subrogation does not have to arise solely out of § 509. It can arise separately under other areas of the Bankruptcy Code. Further, the absence of § 509 in cases dealing with state subrogation law establishes the breadth of subrogation as a remedy in bankruptcy.

§ 509(a) would allow Fibreboard to be subrogated to the tort judgment creditor claims of which Fibreboard paid.[14] No doubt, under Fibreboard's reading of § 509(a) subrogation theory, they could be victorious. However, under their theory everyone with a reimbursement or contribution claim would have a subrogation claim. Where is the difference, or is it simply the option of the creditor? If so, then why the different code sections?

While such dichotomy may be the case, the few decisions commenting on the difference do not inform one of how this separate subrogation right under § 509(a) operates within the bankruptcy process. In fact, an analysis supporting such a position seems quite incongruous at times. In *Spirtos,* the title company sought subrogation for fees for defending the debtor's title per agreement. 103 B.R. at 242. Creditor objected, alleging § 509(a) only applies to codebtors, not insurers. *Id.* at 244. In overruling the objection, the Bankruptcy Court noted the opposing decisions, and § 509 was not held limited to codebtors and sureties but to other forms of subrogees. *Id.* at 244 & n. 9. Noting § 509 was not the only section in the Bankruptcy Code which deals with subrogation, i.e. § 507(d), the *Spirtos* court states, "[e]quitable subrogation is a creation of equity, not statute and should not be confused with the subrogation rights specifically set forth in section 509. . . . If Congress meant to codify all subrogation rights into section 509, it would have done so explicitly. The legislative history of section 509 makes no mention of the common law doctrine of equitable subrogation." *Id.* at 245. The Court found subro-

gation rights under § 509 were separate and distinct from equitable subrogation and ". . . that section 509 is an additional, but not exclusive, remedy in bankruptcy." *Id.* Then the Court went on to rule the title company's subrogation rights would be determined under California law without a hint as to why and how § 509's separate subrogation theory did not apply. *See id.* at 246–47.

In a maritime lien case, the District Court in *In re Topgallant Lines, Inc.,* affirmed the Bankruptcy Court's denial of subrogation rights to maritime liens by a secured creditor. 154 B.R. at 384. The creditor agreed § 509 and equitable subrogation were distinct. *Id.* at 382. The Court, while noting the creditor had not made a "colorable argument" to prevail in equitable subrogation under the *Kaiser Steel* test, argued § 509 created a statutory right of subrogation independent of the principles of equitable subrogation. *Id.* at 382 (citing *Spirtos,* 103 B.R. at 245). However, the creditor's distinction was held too broad in that § 509 only recognizes subrogation rights which non-bankruptcy law recognizes as a subrogation right. "There is no blanket proposition that all non-bankruptcy law is encompassed in equitable subrogation, or that subrogation under § 509 completely ignores non-bankruptcy law." *Id.* (citing *Bugos,* 760 F.2d at 734). Without any further discussion as to how § 509 would function, subrogation was not allowed because under maritime law a creditor could not hold a lien on its own vessels. *Id.* at 383.

---

14. *See Medicine Shoppe,* 210 B.R. at 313–14. Subrogation under 509(a) requires three basic elements. *Slamans,* 69 F.3d at 473. Under the Bankruptcy Code a guarantor or surety ". . . is subrogated to the rights of [the] creditor if it: (1) 'is *liable with* the debtor on' (or has secured); (2) 'a claim of a creditor against [a] debtor;' and (3) 'pays such claim.' " *Id.* (quoting § 509(a)). *See also Bugos,* 760 F.2d at 734; *Cornmesser's,* 264 B.R. at 162.

The Tenth Circuit in *In re Slamans*, a letter of credit case, reversed both the District and the Bankruptcy Courts and held the issuer of a credit card distribution agreement was not liable with the debtor, a criterion of § 509(a). 69 F.3d at 476. The District Court infused the *Kaiser Steel* test into the analysis of § 509. *Id.* at 472 & n. 2. Initially acknowledging the split of authority as to the operation of § 509 vis-à-vis equitable subrogation, the Circuit Court went on to conclude the creditor did not qualify for subrogation under § 509(a) language. "We need not determine whether the district court correctly concluded that First National must satisfy the five part equitable test *in addition to* the requirements of § 509 because we conclude that First National does not qualify for subrogation under the plain language of § 509(a)." *Id.* at 472 n. 2. As in all letters of credit cases, the final allowance of the subrogation claim was based on whether the court found the claimant issuing letters of credit was "liable with the debtor." [15]

In the Western District of Pennsylvania, the Bankruptcy Court in *In re Northview Motors, Inc.*, decided debtor's principals, who were secondarily liable with the debtor, were subrogated to the bank's security interest in the debtor's cause of action. 202 B.R. at 403. The creditors' only objection was that they believed the equities of the case did not favor subrogation and thus the particular subrogee's claim should be subordinated under § 509(b)(1)(C). *Id.* at 400–01. The Court disagreed with those cases which had an "apparent" belief that either equitable subrogation under state law was identical to subrogation un-

der § 509, or if not identical as to § 509, includes the criteria that subrogation should not work an injustice to others' rights. *Id.* at 401. The Court concluded equitable subrogation is not identical to § 509 if for no other reason than § 509 allows a subrogee to make a partial payment to qualify, wherein traditional subrogation as well as equitable subrogation would require a full payment of the creditor's debt. *Id.* Section 509 subrogation rights are distinct and in addition to equitable subrogation, but are not an exclusive remedy in bankruptcy. *Id.* Section 509 did not limit who may be a subrogee. Nonetheless, once more there is an absence of discussion by the *Northview Motors* court as to what other rights or distinctions there are in § 509 from equitable subrogation, and ultimately how each remedy functions when analyzing a subrogation claim.

In the Northern District of Illinois in *In re Medicine Shoppe*, there was a classic factual scenario where the guarantor pays the debtor's debt to the bank and receives an assignment of the bank's rights. 210 B.R. at 311–12. The Bankruptcy Court, while determining § 509 subrogation is a similar doctrine to equitable subrogation, restates both the § 509 test for subrogation and the *Kaiser Steel* test for subrogation. *Id.* at 313–14. Ultimately, the *Medicine Shoppe* court determines the claimant was entitled to subrogation under § 509(a) under either standard. *Id.* at 314.[16]

In *In re Cornmesser's*, a paying guarantor sought subrogation under § 509. 264 B.R. at 162. The Court noted the only distinction between § 509 and equitable

---

**15.** When considering the extent of subrogation in bankruptcy, one should know the cases dealing with letters of credit take on a life of their own. The courts are perpetually debating whether the party issuing the letter of credit is "liable with the debtor." *See, e.g.,*

*Slamans,* 69 F.3d at 475–76 & n. 5. The remainder of their discussion seems immaterial.

**16.** The *Medicine Shoppe* court ruled on this question without citing the dispute.

subrogation was the fact the guarantor would only be required to make a partial payment to qualify under § 509 subrogation where equitable subrogation would require a complete payment. *Id.* at 162–63. The trustee's only objection to the subrogation dealt with the operation of § 509(b)(2). "Subsection 509(b)(2) embodies the general principle that subrogation is not available to a party who satisfies a debt for which that party was primarily obligated." *Id.* at 163 (citing *In re Russell,* 101 B.R. 62, 65 (Bankr.W.D.Ark. 1989)). Subrogation is not available for paying one's own debts.[17]

Lastly, the District Court of New Hampshire in *In re A.G.F. Direct Gas Sales and Servicing, Inc.,* another letter of credit case, the Bankruptcy Court adopted the Ninth Circuit opinion in *Slamans* as to application of § 509. 2002 WL 826817 at *3–5. Having been denied subrogation, the bank took the position the lower court had found § 509 preempted the field of subrogation in bankruptcy. *Id.* at *3. The bank argued it was entitled to other rights of subrogation under § 509, including equitable subrogation. *Id.*

The District Court did not believe the Bankruptcy Court had determined § 509(a) preempted the subrogation field, stating "it is not at all clear that equitable subrogation would provide any greater rights than those available under § 509(a)." *Id.* at *4. Acknowledging the split in authority concerning § 509 and equitable subrogation and the various tests, the Court went on to state, "[g]iven the elements of equitable subrogation, the bankruptcy court had no need to rule that § 509(a) preempts the field in order to decide that the bank has no subrogation right." *Id.*

Thus, the Court suggests the § 509(a) requirement that the claimant be liable with the debtor should be interpreted to mean the claimant must be secondarily liable with the debtor in order to meet the first prong of the § 509 subrogation test. Similarly, other cases have concluded § 509(b)(2) is in fact a criteria where the claimant, to obtain subrogation, cannot be primarily liable with the debtor. *Cornmesser's,* 264 B.R. at 163; *Valley Vue,* 123 B.R. at 205–06; *In re Russell,* 101 B.R. 62, 64–66 (Bankr.W.D.Ark.1989); *Cf., In re Robbins Intern., Inc.,* 275 B.R. 456, 470–72 (S.D.N.Y.2002); *Cooper,* 83 B.R. at 547 nn. 10–11, *In re Yeargin,* 116 B.R. 621, 622–23 (Bankr.M.D.Tenn.1990), *In re Smothers,* 60 B.R. 733, 734–35 (Bankr.W.D.Ky.1986).

## ANALYSIS

Notwithstanding the rabbit warren of decisions surrounding subrogation in Bankruptcy, there is a statutory logic and realist position to its operation herein and elsewhere. First, one must start with the election a claimant must make between contribution and subrogation. If an election is made to treat the claim in subrogation under § 509, and, as some cases suggest, that section is the only source for subrogation in bankruptcy, then Congress has done away with hundreds of years of equity jurisprudence by failing to provide for equitable subrogation or its kin. Conversely, if § 509 encompasses other forms of equitable and conventional subrogation then, notwithstanding such equitable criteria are different than the § 509 subrogation test, the claimant would still have to be barred from also seeking contribution

---

**17.** *See, e.g., Dade County Sch. Bd.,* 731 So.2d at 646–47; *Eastern Nat'l Bank v. Glendale Federal Sav. & Loan,* 508 So.2d 1323, 1324– 25 (Fla. 3rd Dist.Ct.App.1987); *West American,* 495 So.2d at 206–07.

under § 502 to avoid unjust enrichment.[18]

This expansive consideration of the use of subrogation appears logical in that "contribution" under § 502 is interpreted to accept a broad spectrum of reimbursement. If so for contribution, why not subrogation. Considering the history of equitable jurisprudence in this country, the decisions dealing with § 509, and the Code language itself, no evidence is established Congress sought to create a single subrogation concept. If the Code provides the claimant the election of subrogation similarly the claimant can argue the alternative theories of subrogation, as it would have been allowed to under contribution.

As to the judicial debate as to whether § 509 subrogation criterion is different from equitable subrogation, it has been argued the Code would only require the claimant to be liable with the debtor, to have paid the common debt, and the debt to be subrogated to the creditors' rights. In contrast, equitable subrogation requires the claimant to have made an involuntary payment to the creditor to protect the claimant's interest. Further, equitable subrogation requires the entire debt to be paid where the Code might allow the claimant to be "subrogated to the rights of such creditor to the extent of such payment, i.e. a partial payment would suffice."[19] The claimant had to be secondarily liable with the debtor. While some decisions do not consider this factor within the Code's operation, most agree § 509(b)(2) establishes the same secondary liability test for the claimant to obtain subrogation under § 509. Lastly, equitable subrogation requires a court to determine the subrogation would "not cause an injustice to the rights of others." While this concept of equitable jurisprudence is not stated in § 509, it appears such a concept is an innate part of bankruptcy policy.[20]

Therefore, it is the finding of this Court that § 509 establishes a specific nonexclusive test for the allowance of a subrogation claim. Further, this Court finds that either under § 509 or a Florida theory of equitable subrogation, Fibreboard is not entitled to subrogation. Fibreboard is primarily liable with Celotex and, under each theory, it cannot be subrogated for paying its own debts. Further, this Court finds that to allow Fibreboard to be subrogated to funds specifically segregated for bodily injury claimants it was found to have injured would be unjust. Further, the payment by Fibreboard does not unjustly enrich the Debtor. The creditors of both Celotex and Fibreboard are benefited by disallowing Fibreboard's claims. The Supreme Court came to that conclusion in 1893, and this Court follows such precedent. *German Bank v. United*

---

**18.** Section 502 speaks of an election to subrogation under § 509 which cuts off rights to contribution. As neither the language of §§ 502 or 509 speaks directly to another form of subrogation, an argument could be made that only subrogation under the § 509 criterion would cutoff contribution rights.

**19.** This Court would find this § 509 language dealing with a claimant's being subrogated to "the extent paid" does not translate that § 509 allows subrogation of partial payments. Rather, this language should be read to limit a claimant's subrogation payment to the

amount paid to discharge mutual debt. *Cornmesser's*, 264 B.R. at 162–63.

**20.** *Hartman*, 100 B.R. at 48–49; *In re Hall*, 99 B.R. 425, 427–28 (Bankr.N.D.Iowa 1989); *Russell*, 101 B.R. at 64; *FJS Tool*, 88 B.R. at 870–71. It could be argued, although Fibreboard has not taken this position, that by assignment of a bodily injury judgment creditor's claim, its claim is secured. However, this argument fails because it would thwart a "ratable distribution" by inequitable conduct. *American Surety*, 314 U.S. at 317, 62 S.Ct. 226.

*States,* 148 U.S. 573, 580–81, 28 Ct.Cl. 558, 13 S.Ct. 702, 37 L.Ed. 564 (1893).